THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES KEESEE, Defendant-Appellant.

First District (1st Division)   No. 62934

Opinion filed March 28, 1977.

James J. Doherty, Public Defender, of Chicago (Diane M. Burdick and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant was charged by complaint with the offense of contributing to the sexual delinquency of a minor in violation of section 11—5 of the Criminal Code. (Ill. Rev. Stat. 1973, ch. 38, par. 11—5.) After a jury trial, a verdict of guilty was returned. The trial court entered judgment on this verdict and sentenced defendant to six months in the House of Corrections.

Defendant now appeals from this judgment and contends: (1) that the complaint is fatally defective due to its failure to allege which part of the complaining witness' body defendant lewdly fondled or touched; (2) that the examination of the complaining witness failed to meet the established standards for determining the competency of a child witness; and (3) that the prosecution failed to prove beyond a reasonable doubt that the defendant lewdly fondled or touched the complaining witness, an essential element of the offense.

We affirm.

The prosecutrix (hereinafter referred to as Mary or complaining witness), 13½ at the time of trial, testified that she first encountered the defendant as she and three of her friends were watching a movie at the McVickers Theater in Chicago on June 14, 1975. During the movie, the defendant, Charles Keesee, who was seated next to Mary, began a conversation with her. The defendant then put his arm around Mary, started to feel her leg and told her she "would love every minute of it." After Mary resisted the defendant's attempts to have her turn toward him, the defendant asked Mary if she wanted him to stop and she replied yes. Although she never sought the aid of an usher, Mary became frightened and left the show.

Mary went on to testify that as she was waiting for the bus outside of the theater, the defendant approached her, boarded the same bus, sat

down next to her and initiated another conversation. Both the defendant and Mary exited the bus at Ashland Avenue. As Mary attempted to cross the street to catch another bus, the defendant grabbed her by the coat collar, put his hand over her mouth, and told her to keep walking and say nothing or he would hit her. After walking a short distance, the defendant forced Mary into an alley and up against a wall. The defendant then pulled Mary's skirt up to her waist, unzipped his pants, and told her to strip. Mary then started to scream and continued screaming for 30 seconds until the police arrived.

Diane Lowell, one of Mary's friends who accompanied her to the McVickers Theater on June 14, 1975, testified that neither she nor any of the other girls talked to the defendant during the movie. The girls talked about Jim Brown, the actor in the movie, and one of the girls told Diane that she taught Jim Brown to "get on hard." While the girls were talking, the defendant looked at Mary and asked her if she ever had sex. Mary did not reply. The defendant then put his arm around Mary, touched her on the knees and kissed her. During this time, Mary said nothing. Mary asked her girlfriends to walk her to the lobby, but the girls refused, saying that they had just returned from the lobby. Mary became irritated and exited the movie theater. About two minutes later, the defendant also left.

Willie Booth, a Chicago Police Officer, testified that on June 14, 1975, as he and his partner were on patrol driving southbound on Ashland Avenue in Chicago, he observed a male pulling a female into an alley. After waiting approximately one minute for traffic, Officer Booth and his partner proceeded toward the alley. Immediately after entering the alley, the officers heard a scream and proceeded farther into the alley where Officer Booth observed the defendant pinning Mary against a fence. The defendant's right arm was underneath the victim's skirt on her waist and his left hand was on the lower part of his zipper. At this time the defendant's fly was open. Officer Booth then exited the squad car, ordered the defendant to halt, and placed him under arrest. At this time the victim was crying.

Testifying in his own behalf, the defendant, 18 years old at the time of the incident, stated that he first encountered Mary and her friends while he was watching the movie, "Slaughter's Big Rip-Off." The defendant stated that he overheard Mary's friends commenting that "his penis was hot." Thereafter, Mary made a similar comment. Charles asked Mary if she wanted his penis and she started to smile. Later, when one of Mary's friends said "Yes, she wants it," defendant sat down next to Mary.

After the defendant and Mary discussed the movie and the school Mary attended, Mary told her girlfriends that she was going home. The defendant asked Mary if she wanted him to meet her outside and Mary responded, "Yes, at the bus stop." The defendant and Mary boarded the

bus together and continued talking about the movie and sex. The defendant asked Mary if she would "turn him on" and Mary replied that she would think about it. According to the defendant, up to this point, he had never touched Mary. The two got off the bus together and turned to walk down Warren Street, holding hands as they walked. Charles suggested that they go into the alley. Mary made no reply, but walked into the alley as if "she really wanted to do it." The defendant asked her if she wanted to be left alone, but Mary said nothing.

Defendant further stated that he never pushed Mary against a wall or fence. He continued to hold her hand as she backed against the fence in the alley, but this was the only physical contact he had with her. He stated that Mary began to scream when she heard the police car pulling up. From the time the defendant met Mary until the time the police arrived, the only way he touched Mary was by holding her hand.

■■ Defendant first contends that the complaint, which failed to allege which part of the victim's body defendant lewdly fondled or touched, is fatally defective. Defendant was convicted under section 11—5(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 11—5(a)(3)) which provides:

> "Any person of the age of 14 years and upwards who performs or submits to any of the following acts with any person under the age of eighteen, contributes to the sexual delinquency of a child:
> * * *
> (3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both;
> * * *."

The complaint charged that "defendant, 18 years of age, attempted to arouse the sexual desires of [the complaining witness], 14 years of age, by lewdly fondling or touching her person."

We believe that the above question has been resolved by our supreme court in its recent decision, *People v. Keegan* (1971), 52 Ill. 2d 147, 286 N.E.2d 345. In *Keegan*, defendant was charged under section 11—4(a)(3) of the Criminal Code with the offense of indecent liberties with a child. The indictment in *Keegan* alleged that the defendant, a person of 17 years of age and upwards performed certain acts of lewd fondling and touching of a child under the age of 16 years of age in violation of section 11—4 of the Criminal Code. Similar to the instant complaint, the indictment in *Keegan* did not allege which part of the victim's body the defendant lewdly fondled or touched. The Illinois Supreme Court held that the indictment in *Keegan* met the requirements of section 111—3(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 111—3(a)) and was thus not defective. Although Keegan was charged under

subsection 3 of section 11—4(a) of the Criminal Code, the language of that subsection is identical to the language of subsection 3 of 11—5(a) of the Criminal Code, the statutory section under which Keesee was charged. Relying on *People v. Keegan*, we hold that the failure of the complaint to allege which part of the victim's body defendant lewdly fondled or touched did not render the complaint fatally defective.

Defendant next contends that the examination of the complaining witness conducted by the prosecution and the trial judge failed to meet the established standards for determining the competency of a child witness. In attempting to establish the complaining witness' competency to testify, the assistant State's Attorney asked her first, what the difference was between telling a lie and telling the truth. The witness did not respond to the first question and, after a 20-second pause following the second question, responded, "Tell, well tell it in a way so to sound like you are not lying." The trial judge then continued the questioning of the witness and established that she had just graduated from the eighth grade, had never failed a grade, and was planning to attend Westinghouse High School. After further establishing that the witness attended Lutheran Church regularly, the trial judge asked the witness if her religious teachings had taught her that lying was a sin. The witness responded affirmatively and further indicated that she believed lying was sinful.

■■■ The complaining witness was 13½ years of age at the time of trial and as such is not presumed to be competent to testify. (*People v. Hall* (1971), 1 Ill. App. 3d 949, 275 N.E.2d 196.) However, the trial court's ruling concerning the competency of a child witness to testify should not be disturbed on review, unless such a ruling involves a manifest abuse of discretion (*People v. Pearson* (1970), 126 Ill. App. 2d 166, 261 N.E.2d 519), or manifest misapprehension of some legal principle. (*People v. Ballinger* (1967), 36 Ill. 2d 620, 255 N.E.2d 10.) Defendant contends that the trial court did not adhere to the following four point test enumerated in *People v. Sims* (1969), 113 Ill. App. 2d 58, 61, 251 N.E.2d 795, 797:

> "If testimony is to be permitted, the court's inquiry must, with reason, satisfy the judge that the witness is sufficiently mature (1) to receive correct impressions by his senses, (2) to recollect these impressions, (3) to understand questions and narrate answers intelligently, and (4) to appreciate the moral duty to tell the truth (and comprehend the meaning of the oath.)"

We see no need to consider in detail each of defendant's contentions as to how the trial court failed to adhere to the above standards. Through its questions, the trial court established that the witness had graduated from the eighth grade, had never failed a grade, had plans to attend high school, and had a religious background which taught her it was sinful to lie. The witness further stated she, herself, believed those teachings.

Although the witness' answers to some of the questions did reflect some hesitation and perhaps confusion, we do not believe based upon the record before us, that the trial court manifestly abused its discretion or failed to adhere to the above test in finding the witness competent to testify.

■■ Defendant finally contends that the prosecution failed to prove beyond a reasonable doubt that he lewdly fondled or touched the complaining witness, an essential element of the offense for which he was charged. Section 11—5(a)(3) of the Criminal Code prohibits "any lewd fondling or touching * * * with the intent to arouse or satisfy the sexual desires * * *." The statute does not limit, nor have we found a case which so limits, the fondling or touching to the victim's sexual organs. There is likewise no necessity for a flesh to flesh touching. *People v. Pierce* (1975), 26 Ill. App. 3d 550, 325 N.E.2d 758.

■■ The victim testified that while she was in the theater the defendant put his arm around her, attempted to have her turn toward him, and told her she "would love every minute of it." The defendant himself stated that at the time sex scenes were being shown and that the topic of discussion included sex. All of the above was corroborated by Diane Lowell. Additionally, the victim testified that once in the alley the defendant pulled her skirt up to her waist. Officer Booth stated he saw the defendant's hand under Mary's skirt at a time when the defendant's pants' zipper was open. Defendant's own testimony indicates that he was sexually aroused at the time. Under these circumstances we conclude that both the touching of the knee in the theater and the raising of the victim's skirt in the alley were done with the intent to satisfy the defendant's sexual desires and that the evidence presented at trial was sufficient to prove beyond a reasonable doubt the requisite lewd fondling or touching.

For the above reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and BUA, JJ., concur.