**Affirmed and Opinion filed November 29, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-00990-CR

---

**DENNIS BROOKS, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 1183560**

---

## O P I N I O N

Appellant Dennis Brooks, Jr. was indicted for sexual assault of a child. A jury convicted appellant as charged in the indictment, and the trial court assessed an enhanced sentence of life imprisonment. We affirm.

### BACKGROUND

Appellant first met the complainant when she was eight years old and appellant was dating the complainant's mother. Appellant frequently visited the complainant's home and eventually moved in with and married the complainant's mother. During the summer of the complainant's sixth grade school year, appellant began engaging in sexual

activity with the complainant, which intensified until 2005 when the complainant was fifteen years old. The complainant told her mother about the abuse approximately a week after the complainant's last encounter with appellant, and the complainant's mother informed law enforcement officials.

Appellant was indicted for intentionally and knowingly causing his sexual organ to contact the sexual organ of the complainant, who was younger than 17 years old at the time, on or about December 23, 2005. The State's evidence primarily consisted of testimony from the complainant, the complainant's mother, the doctor who conducted the complainant's medical examination after her outcry, a child sexual abuse expert, and Anthony McGuire—an inmate who was incarcerated in the Harris County jail with appellant as appellant awaited trial. McGuire testified that he and appellant were kept in a separate area for sex offenders within the Harris County jail and that appellant told him "about his victim and that, you know, he slept with her a few times. He was infatuated with her and everything like that." McGuire testified:

> He said that, you know they had oral sex and then just the regular sex, you know, that you would have with a person. . . . He said he [performed oral sex on] her. . . . He mentioned something about she got in trouble at school, he had to go back and pick her up. They had like a little something going in the car at that time. . . . He said [sexual acts occurred] a few times at the apartment or wherever they were staying at, but that's all he said.

The jury found appellant guilty as charged in the indictment. During the punishment phase of the trial, appellant pleaded "true" to an enhancement paragraph regarding a 1992 Kansas conviction for aggravated sexual battery. Based on this prior conviction, the trial court assessed an enhanced sentence of automatic life imprisonment pursuant to Texas Penal Code section 12.42(c)(2). *See* TEX. PENAL CODE ANN. § 12.42(c)(2) (West 2011). Appellant raises nine issues on appeal.

In Issue 1, appellant argues that the trial court "committed error by admitting into evidence a prior conviction during the guilt/innocence phase of the trial." In Issue 2 and Issues 6 through 9, appellant argues that he was denied effective assistance of counsel

because his trial counsel (1) failed to call any rebuttal witnesses in response to the "uncorroborated testimony" of McGuire; (2) advised appellant to plead "true" to an enhancement paragraph that should not have been used; and (3) failed to object to the trial court's use of the enhancement paragraph. In Issue 3, appellant argues that the trial court should have instructed the jury that it could not convict appellant on the uncorroborated testimony of an inmate regarding a statement against interest made by appellant while incarcerated. In Issues 4 and 5, appellant argues that his Kansas conviction for aggravated sexual battery should not have been used to enhance his sentence because it does not contain elements that are substantially similar to elements of any of the enhancement offenses listed in section 12.42(c)(2). *See id.* We address appellant's issues out of order.

## I.      Uncorroborated Testimony of Inmate (Issue 3)

Appellant argues in Issue 3 that the trial court failed to instruct the jury that it could not convict appellant on the uncorroborated testimony of an inmate regarding a statement against interest made by appellant while incarcerated. *See* TEX. CODE CRIM. PROC. art. 38.075 (West Supp. 2009).

Appellant did not request and the trial court did not give a jury instruction pursuant to article 38.075. Article 38.075 states, in relevant part:

> A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

*Id.* Appellant argues that the trial court was under a duty to instruct the jury *sua sponte* pursuant to this rule, regardless of whether he requested such an instruction.

No court has been asked since article 38.075 became effective in September 2009 directly to decide whether it imposes such a duty on trial courts. *See, e.g., Watkins v. State*, 333 S.W.3d 771, 778–79 (Tex. App.—Waco 2010, pet. ref'd) (noting that State

3

conceded on appeal that trial court should have instructed the jury *sua sponte* pursuant to article 38.075). However, a trial judge must instruct the jury *sua sponte* on the "law applicable to the case." *See Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). Analyzing article 38.075 under case law applicable to similar corroboration requirements, we conclude that the trial court was under a duty to instruct the jury *sua sponte* according to article 38.075. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) (imposing similar corroboration requirement for accomplice witness testimony); *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (trial court has a duty to instruct jury *sua sponte* pursuant to article 38.14, if applicable); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005) (imposing similar corroboration requirement for informant testimony); *Simmons v. State*, 205 S.W.3d 65, 76–77 (Tex. App.—Fort Worth 2006, no pet.) (trial court has a duty to instruct jury *sua sponte* pursuant to article 38.141, if applicable).

Though we conclude the trial court erred in failing to instruct the jury according to article 38.075, we nonetheless conclude that appellant was not egregiously harmed by the trial court's unobjected-to failure to give such an instruction.

## A. Applicable Law and Standards

Article 38.075 does not tell the jury to be skeptical of inmate witness testimony; nor does it require the jury to give less weight to such testimony than to other evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.075; *Herron*, 86 S.W.3d at 632. An instruction under article 38.075 "merely informs the jury that it cannot use the . . . testimony unless there is also some [independent] evidence connecting the defendant to the offense." *See* TEX. CODE CRIM. PROC. ANN. art. 38.075; *Herron,* 86 S.W.3d at 632. "Once it is determined that such . . . evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the factfinder's decision-making." *See Herron*, 86 S.W.3d at 632. Therefore, the existence of corroborating evidence "tending to connect" appellant to the offense can "render harmless" the trial court's failure to submit an article 38.075 instruction by fulfilling the purpose that such an instruction is designed to serve.

4

*See id.*

To analyze this issue, we eliminate all of McGuire's testimony regarding appellant's statements and "determine if the remaining inculpatory evidence tends to connect appellant to the offense." *See Freeman v. State*, —S.W.3d—, No. 14-09-00399-CR, 2011 WL 3627697, at *4 (Tex. App.—Houston [14th Dist.] Aug. 18, 2011, no pet. h.) (citing *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). A harmless error analysis for the omission of an article 38.075 witness instruction is flexible and takes into account the existence and strength of such corroborating evidence and the applicable standard of harm. *See Herron*, 86 S.W.3d at 632. In determining the strength of corroborating evidence, we examine (1) its reliability or believability; and (2) the strength of its tendency to connect the defendant to the crime. *See id.*

Under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), the appropriate harm analysis for jury charge error depends on whether the defendant preserved error by bringing the improper omission to the trial court's attention. *Herron*, 86 S.W.3d at 632. When the error is properly preserved, a reversal is required if "some harm" is shown. *Id.* But when the defendant has failed to preserve error, as is the case here, we only reverse for egregious harm. *Id.*

The difference in the harm standards impacts how strong the corroborating evidence must be for the error in omitting the instruction to be considered harmless. *See id.* Under the egregious harm standard, the omission of the instruction is generally harmless unless the corroborating evidence is "'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *See id.* (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).[1] With these

---

[1] The question of whether the absence of an instruction caused appellant "some harm" generally will turn on whether the record contains a significant amount of corroborating evidence, and whether the record reveals no rational basis on which the jury could have doubted or disregarded that evidence. *See Davis v. State*, 278 S.W.3d 346, 353 (Tex. Crim. App. 2009) (citing *Herron*, 86 S.W.3d at 631–34). This standard is not applicable to our review of the trial court's unobjected-to failure to instruct the jury *sua sponte,* but it is relevant to our discussion in Part IV of appellant's ineffective assistance complaint regarding counsel's failure to request such an instruction. *See id.* (counsel's failure to request instruction

standards in mind, we turn to the record to determine the reliability and strength of the corroborating evidence "tending to connect" appellant to the sexual assault charge.

### B.    Corroborating Evidence

There is substantial evidence corroborating appellant's acts in furtherance of the assault.  The complainant testified that one morning during the summer of her sixth grade school year, appellant entered the room where she was watching a movie and asked her if she "wanted to try something new."  Appellant instructed the complainant to take off her pants and underwear, and to get on the floor on her knees and forearms.  Despite her reluctance, the complainant complied while appellant got on the floor behind the complainant "with his pants around his ankles" and masturbated.

The complainant testified that the same thing happened many more times, and that on different occasions she touched appellant's "middle part, his hands . . . and sometimes his chest," and that appellant touched "[m]y breasts, my behind, my middle part, my thighs, my legs, and that's it."  She testified that on one occasion, appellant interrupted the complainant while she was showering and proceeded to shave her "middle part" for her.  On another occasion, appellant was letting the complainant drive his car when he told her to "pull over and pull down [her] pants and try to face him and he started masturbating."  She testified that after these incidents, appellant often would buy her gifts.

The complainant also testified that appellant's penis has a "line on it, like a scar." The complainant's mother confirmed that appellant "has an area where during his circumcision that it was held funny, so it looks kind of like a scar or something like that." The complainant's mother testified that she had never talked with the complainant about the appearance of appellant's penis.

The complainant testified that despite the abuse, she still loved appellant and

---

may be deficient but not prejudicial only if corroborating evidence is insufficient to defeat finding of "some harm" from absence of instruction under *Herron*).

wanted to have a relationship with him. The last time the complainant saw appellant was on December 20, 2005, which was after appellant and the complainant's mother had gotten a divorce.[2] Appellant took her to a basketball game and then to a house where appellant was staying with a friend. Appellant showered and approached the complainant without any clothes on. He instructed her to take off her clothes and lay down on a bed. Appellant got on top of the complainant and told her that she had "a nice body." She testified that appellant began "rubbing his middle part up against mine and then told me to get on my stomach and did the same thing." The complainant testified that appellant's sexual organ touched her sexual organ during this time, and then appellant "put his middle part up against [her] behind." Appellant then instructed the complainant to lick his chest while he masturbated, something he made her to do on other occasions. Appellant took the complainant shopping afterward and bought her two new pairs of shoes. About a week later, the complainant's mother asked the complainant "if somebody had done something to her," and the complainant identified appellant.[3]

In response to the State's question about how many times appellant's penis touched her vagina when she was under the age of 17, the complainant answered, "Every week, every day." The complainant agreed that she was not making any allegations that

---

[2] Defense witness Beverly Alexander testified that she had a short phone conversation with appellant on December 20, 2005. She also testified that she was with appellant at a barber shop between about three and seven o'clock on the afternoon of December 23, 2005, the "on or about" date alleged in the indictment. Appellant argues in his brief that this evidence "challenged the child's testimony concerning appellant's opportunity to have molested her on specific occasions." Alexander's testimony does not contradict the complainant's testimony about events that allegedly took place on December 20, 2005; additionally, the State is not required to prove that those events actually took place on December 23, 2005, when Alexander testified she was with appellant at the barber shop. *See Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex. Crim. App. 1997) ("on or about" language in indictment allows State to prove a date other than specific date alleged so long as the date is before the presentment of the indictment and within the statutory limitation period).

[3] Appellant argues that parts of the complainant's testimony damaged her credibility. For example, the complainant testified that she once witnessed appellant shaving her mother's "middle part." The complainant's mother testified that it would have been "impossible" for the complainant to have seen that because it only happened once, and the complainant was "not even in that house." The complainant's mother testified that "[i]f she saw it, then this happened at a time I don't remember. I remember the first time he shaved me, any time thereafter, I don't recall." In response to defense counsel's question asking whether the complainant's mother had "ever had any problems with your daughter lying to you," she answered, "Yes," but testified that it was not a "regular thing."

7

the abuse involved penetration.[4]

Dr. Reena Issac testified that she examined the complainant after her outcry and discovered no signs of physical trauma to the anal-genital area. She explained that her findings are (1) consistent with the complainant's particular allegations; and (2) common among victims of childhood sex abuse with a delayed outcry. The complainant informed Dr. Issac about the history of abuse with details that are consistent with the complainant's testimony. When Dr. Issac asked the complainant if appellant's penis was ever inside her, she answered, "[N]o, he rubbed it. . . . [H]e tried to put it inside, it hurt and he stopped."

We do not believe this evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive" without McGuire's testimony. *See Herron*, 86 S.W.3d at 632. In fact, the complainant's testimony, along with testimony from the complainant's mother and Dr. Issac, constitutes substantial corroborating evidence "tending to connect" appellant to the sexual assault charge.[5]

---

[4] On cross-examination, appellant's fellow inmate McGuire testified:

Q. Okay. And when you say regular sex, how would you describe regular sex?

A. He said he had sex with her. What do you want me to say?

Q. You are testifying, sir, not me.

A. I told you that's what he told me; "regular sex," that's what he told me.

Appellant's trial counsel argued in his closing statement that there was "no evidence" that appellant engaged in "regular sex" with the complainant, and that McGuire's testimony must have been an incorrect "guess." Although this argument may have cast doubt on the believability of this particular part of McGuire's testimony, it does not answer the question of whether, excluding McGuire's testimony altogether, there exists any corroborating evidence "tending to connect" appellant to the offense.

Notwithstanding the standard we apply here, we note that the specific details contained in McGuire's testimony were corroborated by other witnesses. For example, McGuire also testified that appellant told him the encounters with the complainant involved oral sex performed by appellant; occurred in an apartment "or wherever they were staying," as well as in a car; and were motivated by appellant's desire to show the complainant "how [it is] right for a man and woman to have a relationship" because the complainant had revealed to appellant that she believes herself to be gay. These details of the encounters were relayed by the complainant in her testimony as well.

[5] The record reveals no rational basis on which the jury could have doubted or disregarded the significant amount of corroborating evidence, as would be relevant to appellate review of the record for "some harm" in the event that counsel had, in fact, preserved this issue for our review. *See supra* note 2; *see also Davis*, 278 S.W.3d at 352; *Gonzalez v. State*, —S.W.3d—, No. 09-10-00478-CR, 2011 WL 3925501, at *3–5 (Tex. App.—Beaumont Aug. 24, 2011, no pet. h.).

Accordingly, the trial court's failure to instruct the jury *sua sponte* pursuant to article 38.075 did not egregiously harm appellant. *See Herron*, 86 S.W.3d at 632; *see also Medina v. State*, 7 S.W.3d 633, 642–43 (Tex. Crim. App. 1999) (failure to give requested article 38.14 instruction did not cause "some harm," in part because other witnesses' testimony linked defendant to crime); *cf. Saunders*, 817 S.W.2d at 692–93 (failure to give article 38.14 instruction egregiously harmed defendant because only corroborating evidence was contradicted and, even if believed, did not have a very strong tendency to connect defendant with crime).

We overrule appellant's Issue 3.

## II. "Evidence of a Prior Conviction" (Issue 1)

Appellant argues in Issue 1 that the trial court "committed error by admitting into evidence a prior conviction during the guilt/innocence phase of the trial."

McGuire testified that while he was incarcerated with appellant, they were segregated based on their status as sex offenders. The State made one comment in closing arguments regarding appellant's status as a sex offender: "If the defendant did not tell [McGuire] those details [about appellant's sexual activity with the complainant], how does [McGuire] know that information? Well, ladies and gentlemen, he knows it because when they are in the Harris County jail, [appellant] found somebody he could brag to. He felt comfortable bragging to [McGuire] because [appellant] knew [McGuire] was another sex offender." Appellant argues that McGuire's testimony and the State's comment constituted an indirect reference to appellant's 1992 Kansas conviction for aggravated sexual battery. Appellant failed to object to the admissibility of this testimony or to the State's arguments. Accordingly, he failed to preserve this issue for review. *See* TEX. R. APP. P. 33.1.[6]

---

[6] Appellant argues that we may nonetheless review the admissibility of the testimony because under article 37.07 of the Texas Code of Criminal Procedure, the trial court should have instructed the jury that it should only consider evidence of "an extraneous crime or bad act" that was properly introduced during the punishment phase of the trial if the crime or act was shown beyond a reasonable doubt. *See* TEX. CODE. CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West 2006 & Supp. 2011). Appellant

Even if appellant had preserved this issue for our review, we do not agree with appellant that McGuire's testimony or the State's comment "could have implied to the jury that there were and are other prior convictions which caused Appellant to be designated as a sexual offender."

Even if a reasonable jury could have treated these comments as an implicit reference to a prior sex offense conviction rather than to appellant's status in the present case as an alleged sex offender awaiting trial in the Harris County jail, any such misunderstanding was eliminated during jury deliberations. The jury sent a note to the trial court: "The State's last witness, an inmate, gave testimony he claimed resulted from conversations between the Defendant and the witness while they were both incarcerated. Was the defendant incarcerated with the witness due to the allegations against the Defendant in this case?" The trial court responded, "Yes." In light of this clarification, we conclude that the jury would not have misunderstood McGuire's testimony or the State's comment to be a reference to a prior conviction.

Accordingly, we overrule appellant's Issue 1.

## III. Kansas Conviction for Aggravated Sexual Battery (Issues 4 and 5)

Appellant argues in Issues 4 and 5 that his 1992 Kansas conviction for aggravated sexual battery should not have been used to enhance his sentence because it does not contain elements that are substantially similar to elements in any of the enhancement offenses listed in section 12.42(c)(2). *See* TEX. PENAL CODE ANN. § 12.42(c)(2)(B).

Section 12.42 provides enhanced penalties for repeat felony offenders. Section 12.42(c)(2) "effectively creates a 'two-strikes policy' for repeat sex offenders in Texas, embodying the legislature's intent to treat repeat sex offenders more harshly than other repeat offenders." *Prudholm v. State*, 333 S.W.3d 590, 592 (Tex. Crim. App. 2011). Section 12.42(c)(2) imposes an automatic sentence of life imprisonment for a defendant

---

does not explain why he was entitled to such an instruction during the guilt-innocence phase, or how this procedural rule has any bearing on the question of whether appellant preserved his complaint about the admissibility of evidence introduced during the guilt-innocence phase of a trial.

convicted of a sexual offense listed in section 12.42(c)(2)(A) if he committed that offense after previously having been convicted of any of the enumerated sexual offenses in section 12.42(c)(2)(B), or "under the laws of another state containing elements that are *substantially similar* to the elements of an [enumerated] offense." *Id*.; *see also* TEX. PENAL CODE ANN. § 12.42(c)(2).

Before using a prior conviction from another state for this purpose, the trial court first must take judicial notice of the relevant state statute and make a finding that the elements of that offense are substantially similar to the elements of an offense enumerated in section 12.42(c)(2)(B). *See* TEX. PENAL CODE ANN. § 12.42(c)(2)(B) (listing offenses that may be used to enhance sentence to automatic life imprisonment under (c)(2)); *Wagner v. State*, Nos. 14-07-00906-CR & 14-07-00907-CR, 2009 WL 838187, at *13 n.12 (Tex. App.—Houston [14th Dist.] Mar. 31, 2009, pet. ref'd) (mem. op., not designated for publication) (as matter of statutory interpretation, trial court must take judicial notice of statute from other state to make finding of substantial similarity under section 12.42(c)(2) (citing TEX. R. EVID. 202 and *Randolph v. State*, No. 06-08-00058-CR, 2008 WL 5058597, at *1 (Tex. App.—Texarkana Dec. 2, 2008, no pet.) (mem. op., not designated for publication))). The trial court stated its finding on the record "that the Kansas statute is similar to the charge [that] the jury just found [appellant] guilty of, sexual assault of a child [under section 21.011]."

Appellant argues on appeal that the elements of the Kansas statute cannot be "substantially similar" because the Kansas statute includes any offensive "touching," while the section 12.42(c)(2)(B) offenses criminalize only the offensive touching of specific areas of the body. *See, e.g.*, TEX. PENAL CODE ANN. § 21.11(c) (West 2011) (indecency with a child; defining certain prohibited "sexual contact" as touching of the anus, breast, or any part of the genitals of the child by a person, or of the person by the child); *id*. § 22.011(a)(2) (West 2011) (sexual assault of a child; prohibiting certain penetration of and contact between the mouth, anus, or sexual organ of a person and a child). Appellant argues in his brief: "The Kansas statute addresses much less offensive

11

conduct than any of the pertinent Texas statutes; a touching of the hair, arm, hand, forehead, or literally any part of the body is sufficient under the Kansas statute . . . ." Appellant failed to object to the trial court's finding or the imposition of the enhanced sentence. Appellant therefore has failed to preserve this issue for review on appeal. *See* TEX. R. APP. P. 33.1.

Even if appellant had preserved this issue, we conclude that the elements listed in the Kansas statute for aggravated sexual battery are substantially similar to the elements of the Texas offense of indecency with a child, one of the enhancement offenses listed in section 12.42(c)(2)(B).

We review the trial court's "substantially similar" finding *de novo*. *See* TEX. PENAL CODE ANN. § 12.42(c)(2)(B); *Hardy v. State*, 187 S.W.3d 232, 236 (Tex. App.— Texarkana 2006, pet. ref'd) ("substantially similar" determination is legal question of statutory interpretation and must be reviewed *de novo*).[7] For two offenses to be substantially similar, the elements being compared first must display "a high degree of likeness, but may be less than identical." *Prudholm*, 333 S.W.3d at 594. This "high degree of likeness" must involve more than similarity in merely "a general sense." *See id*. at 599. Secondly, "the elements must be substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses." *Id*. at 595. With these considerations in mind, we turn to the elements relevant to appellant's issues.

### A. "High Degree of Likeness"

Appellant pleaded guilty to the offense of aggravated sexual battery in Kansas on June 26, 1992, based on the following allegations in the complaint:

> [O]n or about the 5th day of May, 1992, [appellant] did then and
> there unlawfully, willfully and feloniously touch the person of another, to-

---

[7] Appellant first complains on appeal that the trial court's finding of "mere similarity" does not constitute a finding that the elements of the Kansas statute are substantially similar. Because we review the trial court's use of the enhancement paragraph *de novo*, we need not decide whether the trial court's articulation of substantial similarity was sufficient.

wit: M.M., a child under the age of sixteen (16) years, who was not the spouse of the offender and who did not consent to the touching, with the intent to arouse or satisfy the sexual desires of the offender.

Aggravated sexual battery was defined at that time, in relevant part, as "sexual battery," or "the intentional touching of the person of another . . . who is not the spouse of the offender and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another," against "a person under 16 years of age." KAN. STAT. ANN. § 21-3518(b) (aggravated sexual battery statute in effect prior to July 1, 1993 and subsequent amendments; current version at KAN. STAT. ANN. § 21-5505(b) (West 2010)); KAN. STAT. ANN. § 21-3517 (sexual battery statute in effect prior to July 1, 1993 and subsequent amendments; current version at KAN. STAT. ANN. § 21-5505(a) (West 2010)). Appellant's offense was punishable by a maximum sentence of three to ten years imprisonment and up to a $10,000 fine. KAN. STAT. ANN. § 21-4501(d) (statute in effect prior to July 1, 1993 and subsequent amendments; current version at KAN. STAT. ANN. § 21-6701 (West 2010)) (classifying offense under 21-3518 as class D felony punishable by "a minimum of not less than two years nor more than three years and a maximum of not less than five years nor more than 10 years"); KAN. STAT. ANN. § 21-4503(1)(b) (statute in effect prior to July 1, 1993 and subsequent amendments; current version at KAN. STAT. ANN. § 21-6710 (West 2010)) (class D felony punishable by up to $10,000 fine).

A person commits the offense of indecency with a child under Texas Penal Code section 21.11 if, with a child younger than 17 year of age, the person "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a)(1).[8] "Sexual contact" includes the following acts, "if committed with the intent to arouse or gratify the sexual desire of any person": (1) "any touching by a person . . . of the anus, breast, or any part of the genitals of a child"; or (2) "any touching

---

[8] A person also commits an offense under this section if, with a child younger than 17 years of age, the person exposes the person's anus or any part of the person's genitals, knowing the child to be present, or causes the child to expose the child's anus or any part of the child's genitals with the intent to arouse or gratify the sexual desires of any person. TEX. PENAL CODE ANN. § 21.11(a)(2). This type of offensive conduct is not relevant to our inquiry.

13

of any part of the body of a child . . . with the anus, breast, or any part of the genitals of a person." *Id.* § 21.11(c). An offense under the foregoing provision constitutes a felony of the second degree, punishable by a sentence of between two and 20 years imprisonment and up to a $10,000 fine. *Id.* § 21.11(d); *id.* § 12.33 (West 2011).

Both these offenses share the following characteristics: (1) touching or contact; (2) between the offender and a child; (3) who is not the spouse of the offender; (4) with the intent to arouse, gratify, or satisfy the sexual desire of any person.[9] The offenses differ in that the Texas statute (1) does not require the element of non-consent;[10] (2) also punishes activity that "causes the child to engage in sexual contact"; (3) punishes offensive conduct involving a child younger than 17 years of age, in addition to offensive conduct involving a child younger than 16 years of age; and (4) limits the category of offensive contact to specific areas of the body.

In deciding whether these differences defeat an otherwise "high degree of likeness," we turn to the recent Court of Criminal Appeals decisions in *Prudholm* and *Warren*, which provide valuable guidance on how to analyze this issue. *See Ex Parte Warren*, — S.W.3d —, No. AP-76435, 2011 WL 4467224 (Tex. Crim. App. Sept. 28, 2011); *Prudholm*, 333 S.W.3d at 590.

In *Prudholm*, the court addressed the question of whether the elements of the California sexual battery statute are "substantially similar" to the elements of the Texas sexual assault statute for enhancement purposes under section 12.42. The *Prudholm* court concluded that the elements are not "substantially similar," in part because the "touching" of an "intimate part" relevant to California offense of sexual battery

---

[9] The Kansas definition of sexual battery requires that the offense be against a person "who is not the spouse of the offender" as an element of the offense. *See* K.S.A. 1983 Supp. 21-3518. Similarly but not identically, it is an affirmative defense to prosecution under the Texas statute if the actor was the spouse of the child at the time of the offense. *See* TEX. PENAL CODE ANN. § 21.11(b-1).

[10] However, it is an affirmative defense to prosecution under the Texas Statute under certain circumstances if the actor was not more than three years older than the victim and of the opposite sex, and the actor did not use duress, force, or a threat against the victim at the time of the offense. *See* TEX. PENAL CODE ANN. § 21.11(b).

encompassed "a markedly different range of conduct" than "penetration or contact" of a person's "anus" or "sexual organ" relevant to the Texas offense of sexual assault. *Prudholm*, 333 S.W.3d at 599. However, the court also found that the following considerations indicated that the statutes were designed to address different offensive conduct, and therefore weighed against a finding of substantial similarity: (1) the California statute specifically excluded the more severe offenses of rape and sexual penetration from its definition of sexual battery, while the Texas sexual assault statute purposely encompasses those offenses; (2) the "offensive contact" relevant to the California sexual battery statute was more akin to the offensive contact encompassed by the Texas assault statute, rather than the "severe physical and psychological trauma of rape" encompassed by the Texas sexual assault statute; and (3) sexual battery in California was a misdemeanor punishable by only six months imprisonment, while sexual assault in Texas is a second degree felony punishable by a sentence of up to 20 years imprisonment. *Id.*[11]

*Warren* involved a statute that permits the Texas Department of Criminal Justice to impose sex-offender conditions on an inmate's parole without prior notice or an opportunity to respond if the inmate has been convicted of an offense in another state that contains elements that are "substantially similar" to the elements of certain sex-related offenses. *See Warren*, 2011 WL 4467224, at *1, *3–5; *see also* TEX. CODE CRIM. PROC. ANN. art. 62.001(5) (West 2006 & Supp. 2011). The court in *Warren* concluded that the Illinois offense of contributing to the sexual delinquency of a child contained elements that displayed a "high degree of likeness" to the elements of the Texas offense of indecency with a child:

> Both offenses involve sexual acts directed towards children: in the Illinois statute, with "any person under the age of 18"; in the Texas statute, "with a child younger than 17 years of age[.]" Both offenses criminalize similar sexual conduct with a child. The Illinois statue prohibits the "lewd

---

[11] The court did not address whether the California sexual battery statute contains elements that are substantially similar to the elements of the Texas offense of indecency with a child under section 21.11.

15

> fondling or touching of [ . . . ] the child" and a "lewd act done in the presence of the child[.]"  And the Texas statute prohibits "engag[ing] in sexual contact with the child" and "expos[ing] the person's anus or any part of the person's genitals[.]"  Both statutes contain nearly the same mental state.  In the Illinois statute, the mens rea is "with the intent to arouse or to satisfy the sexual desires" of any person, while in the Texas, the mens rea is "with intent to arouse or gratify the sexual desire of any person[.]"  While the elements of both statutes are not identical in every way, they are similar enough to indicate a high degree of likeness and thus satisfy the first part of the substantially similar test.

*Warren*, 2011 WL 4467224, at \*6.  We note that although it was not specifically discussed in *Warren*, the "lewd fondling or touching" relevant to the Illinois statute, like the touching relevant to the Kansas statue in this case, was not limited to the specific areas of the body identified in the Texas statute.  *See People v. Keesee* (1977), 47 Ill.App.3d 637, 642, 365 N.E.2d 53, 57, 7 Ill.Dec. 768, 772 (analyzing offense of contributing to the sexual delinquency of a child in effect at the relevant time period; "The statute does not limit, nor have we found a case which so limits, the fondling or touching to the victim's sexual organs.").

Although the Kansas statute encompasses touching beyond the areas of the body identified in the Texas statute, the elements are not required to be identical.  *See Prudholm*, 333 S.W.3d at 594.  Additionally, the fact that an element of the Kansas offense would be insufficient to prove the respective Texas element is not determinative.  *See id*. at 594 n.15 ("For example, a Delaware defendant could be convicted for a touching that was intended to be sexual in nature but was ultimately intended to embarrass or humiliate the victim, whereas such intent would not suffice under the Texas statute to show an intent to arouse or gratify any person's sexual desire." (discussing *Ex parte White*, 211 S.W.3d 316, 318 (Tex. Crim. App. 2007))).  Unlike the differences at issue in *Prudholm*, the differences here are minor rather than major variations on the same punishable conduct: the sexually-motivated touching of children.  Like the offenses at issue in *Warren*, the elements of the offenses in this case display a "high degree of likeness" that goes beyond merely "a general sense."  *Warren*, 2011 WL 4467224, at \*6;

16

*Prudholm*, 333 S.W.3d at 594, 599.

### B.     Individual or Public Interests and the Seriousness of the Offenses

We next consider whether the elements are substantially similar "with respect to the individual or public interest protected and the impact of the elements on the seriousness of the offense." *See Prudholm*, 333 S.W.3d at 595.

The individual and public interests protected by both statutes are clear: to safeguard children from improper sexual conduct through sexually-motivated contact. The Kansas statute furthered this goal by criminalizing the "touching" of a child with the intent to arouse or satisfy sexual desire.    The Texas statute furthers this goal by criminalizing "sexual contact" with a child, which is defined more precisely as contact with certain areas of the body, with the intent to arouse or gratify sexual desire.

This conclusion is bolstered by that fact that both offenses are felonies punishable by multiple-year sentence ranges, which indicates that both states similarly treat the offensive conduct with severity. *See Prudholm*, 333 S.W.3d at 595.  Both offenses are punishable by a fine of up to $10,000 and a minimum sentence of two or three years. That the Texas offense carries a maximum sentence of twenty years, while the Kansas offense carries a maximum sentence of ten years, is not so significant a difference that it defeats a finding of substantial similarity. *Compare id*. at 599 ("[T]he difference in the sexual elements results in a much less serious California offense. . . .  [S]exual battery is a misdemeanor punishable by only six months imprisonment, while sexual assault is a second degree felony punishable by twenty years imprisonment."), *with Warren*, 2011 WL 4467224, at *7 (although punishment applicable almost forty years earlier was for a misdemeanor offense with a sentence of less than one year and/or a fine of less than $1,000, contemporary punishment, which treats offensive conduct as felonious with a sentence of "various ranges of terms of imprisonment," supported finding of substantial similarity).  We conclude that the elements of both offenses are "substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses." *See Prudholm*, 333 S.W.3d at 595.

17

Having found the elements of appellant's Kansas conviction to be "substantially similar" to one of the enhancement offenses enumerated in 12.42(c)(2)(B), we overrule appellant's Issues 4 and 5.

## IV.     Ineffective Assistance of Counsel (Issues 2, 6–9)

In Issue 2 and Issues 6 through 9, appellant argues for the first time on appeal that he was denied effective assistance of counsel because his trial counsel (1) failed to call any rebuttal witnesses in response to the "uncorroborated testimony" of McGuire; (2) advised appellant to plead "true" to an enhancement paragraph that should not have been used; and (3) failed to object to the enhancement paragraph.

An ineffective assistance of counsel issue may be raised for the first time on direct appeal, although the record on such a direct appeal often will not be sufficient to show that counsel was ineffective. *Cannon v. State*, 252 S.W.3d 342, 347 n. 6, 350 (Tex. Crim. App. 2008). In determining whether his trial counsel's representation was ineffective such that it violated appellant's Sixth Amendment right to counsel, we use the two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 668). To establish ineffective assistance of counsel, a defendant must show that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

We assess whether a defendant received ineffective assistance of counsel according to the facts of each case. *Id*. at 813. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id*. We look to the totality of the representation and particular circumstances of each case in evaluating the effectiveness of counsel. *Id*. We must be "highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Lane v. State*, 257 S.W.3d 22, 26 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Trial counsel is strongly presumed to have acted within the wide range of

18

reasonable professional assistance. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). With these standards in mind, we turn to appellant's arguments.

## A. Rebuttal Witnesses

Appellant argues in Issue 2 that he was denied effective assistance of counsel because his trial counsel failed to call any rebuttal witnesses in response to the "uncorroborated testimony" of McGuire. Appellant states:

> Appellant contends that he was not afforded effective assistance of counsel due to trial counsel's failure to present any defense witnesses in rebuttal of the testimony of [McGuire]. Appellant alleges that he informed his trial counsel regarding the availability of said witnesses and requested that the attorney subpoena said witnesses.
>
> . . . .
>
> Appellant's attorneys did not attempt to call any witnesses nor produce any evidence to attack the credibility of [McGuire]. His testimony went . . . unchallenged by the Appellant's trial attorneys. . . . [McGuire's] other cell mates could have been called to show that there were over 40 other men in the jail tank and no private conversation between [McGuire and appellant] were [sic] overheard by anyone."

An ineffective assistance claim can be premised upon an attorney's failure to present witnesses only if the appellant can show that the witnesses were available and that their testimony would have benefitted him. *See Ex parte McFarland*, 163 S.W.3d 743, 757–58 (Tex. Crim. App. 2005) ("Applicant has failed to name any specific witnesses . . . whom his attorneys should have contacted or called as mitigation witnesses. Likewise, he has failed to show that these unnamed witnesses were available to testify or that their testimony would have benefitted him. Therefore, he fails to show prejudice."). Appellant has not made this showing. Moreover, counsel's reasons for not presenting such testimony do not appear in the record. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). We will not sustain an allegation of ineffective assistance of counsel unless it is firmly founded and affirmatively demonstrated in the appellate record. *Stephens v. State*, 15 S.W.3d 278, 279–80 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *McFarland v. State*, 928 S.W.2d 482, 400 (Tex. Crim. App.

19

1996), and *Jiminez v. State*, 804 S.W.2d 334, 338 (Tex. App.—San Antonio 1991, pet. ref'd)). We overrule appellant's Issue 2 based on this argument.[12]

Although not captured by appellant's Issues Presented, appellant also complains in Issue 2 that his trial counsel was ineffective for (1) failing to object to the evidence and arguments that allegedly constituted an implicit reference to appellant's Kansas conviction, as discussed in Issue 1; and (2) failing to object to and request an instruction regarding the "uncorroborated" testimony of McGuire, as discussed in Issue 3. We have already determined that even if appellant had made these objections, the trial court's actions were not error, or were harmless error. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) ("To show ineffective assistance of counsel for the failure to object during trial, the [appellant] must show that the trial judge would have committed error in overruling the objection."); *Cadoree v. State*, 331 S.W.3d 514, 529 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (counsel cannot have performed deficiently by failing to object to or request limiting instruction regarding admissible evidence). We overrule appellant's Issue 2.

## B. Enhancement Paragraph

Appellant argues in Issues 6 through 9 that his trial counsel was ineffective for failing to object and advising appellant to plead "true" to the enhancement paragraph containing his Kansas conviction for aggravated sexual battery. Issues 6 through 9 each depend on appellant's argument that the trial court's use of the enhancement paragraph under section 12.42 was error, which is an argument that we rejected in overruling Issues 4 and 5. Accordingly, we also overrule appellant's Issues 6 through 9. *See Ex parte White*, 160 S.W.3d at 53; *Cadoree*, 331 S.W.3d at 529.

---

[12] Appellant also argues briefly that counsel was ineffective for presenting "[l]ittle or no evidence . . . on behalf of Appellant." We overrule appellant's issue based on this argument for the same reasons. *See Garza*, 213 S.W.3d at 348.

## CONCLUSION

Having overruled all appellant's issues on appeal, we affirm the judgment of the trial court.


/s/    Sharon McCally
Justice


Panel consists of Justices Brown, Boyce, and McCally.

Publish—TEX. R. APP. P. 47.29(b).