

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00044-CR

Robert **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR9639
Honorable Melisa Skinner, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:          Karen Angelini, Justice
                 Luz Elena D. Chapa, Justice
                 Irene Rios, Justice

Delivered and Filed: November 14, 2018

AFFIRMED

A jury convicted appellant Robert Martinez of murder and assessed his punishment at ninety-nine years' imprisonment. The trial court sentenced Martinez accordingly. In a single issue on appeal, Martinez contends the trial court erred by not giving a jailhouse-witness testimony instruction. We affirm the trial court's judgment.

## BACKGROUND

Patrick Cerna, the older brother of victim Steven Cerna, testified he last saw Steven in a maroon vehicle with a broken windshield around 10:30 p.m. on February 19, 2015. According to

Patrick, the other passengers in the vehicle were Albert Isaac, who Patrick also knew as "Looney," and another man who "looked like a little kid." Patrick testified that later, after he saw a news bulletin with a picture of a person of interest in Steven's murder and searched Facebook, he recognized the second man as Robert, or Bobby, Martinez. Patrick further testified he saw Looney twice more that night, without Steven, with the final time being around 2:45 a.m. on February 20, 2015.

Patricia Cerna, Steven's mother, testified Looney picked Steven up from their apartment around 3:00 a.m. on February 20, 2015. Patricia further testified she watched out the window and saw Steven get into a maroon, four-door vehicle that had a cracked windshield. According to Patricia, Martinez was a passenger in that vehicle. At about 4:00 a.m., Patricia received a phone call from Steven, who was calling from phone number 210-769-2222 — a number Patricia did not recognize.

Patricia testified it was unusual for Steven not to be home by morning, so shortly after 8 a.m., she began searching Facebook for messages regarding Steven. Patricia saw a breaking news report stating the body of a young man had been found in a ditch. According to Patricia, the news report listed a maroon, four-door vehicle with a cracked windshield as a vehicle of interest. Approximately an hour later, Patricia saw the maroon vehicle outside her apartment. Patricia testified Martinez, Looney, and an unknown man were the only three people to exit the vehicle. Patricia further testified she later saw the vehicle being cleaned out. Patrick also testified that around 3:30 p.m. on February 20, 2015, he saw a man he identified as Martinez and another man get into the maroon vehicle and drive away.

At approximately 8:00 a.m. on the morning of February 20, 2015, as Debora Rodriguez was returning from taking her grandchildren to school, she encountered a vehicle she described as a burgundy, four-door car with a broken windshield. The vehicle was parked facing against traffic

"on Sutton" "near the creek" in Rodriguez's travel lane. Rodriguez saw three men exit the vehicle and walk toward the ditch. After she passed the vehicle, she saw a fourth man going into the ditch via her rearview mirror. Rodriguez described the men as Hispanic and nineteen to twenty years' old. Rodriguez testified she arrived at her apartment a few minutes later and immediately took some boxes from her doorway to the dumpster. While she was at the dumpster, Rodriguez heard four to five gunshots and what she believed was a woman yelling "You killed him. You killed him." Rodriguez immediately called 9-1-1.

San Antonio Police Department ("SAPD") Detective Leroy Carion of the Homicide Unit testified he was dispatched to the shooting scene at approximately 8:15 a.m. Detective Carion stated the shooting scene was in a ditch approximately thirty yards from the street. The victim appeared to have been shot. Medical Examiner Dr. James Augustine Fieg later confirmed the victim suffered four direct gunshot wounds and one graze wound.

The victim was ultimately identified as Steven Cerna. Detective Carion visited Patricia and learned Steven was last seen with Looney. Detective Carion took a statement from Looney, who informed Detective Carion he last saw Steven at the Motel 6 "downtown" when Steven left with Looney's nephew Robert Martinez and two friends. Looney provided Detective Carion with Martinez's phone number, which was 210-769-2222. Detective Carion testified a witness identified Looney in a lineup as one of the men seen leaving the shooting scene. Detective Carion also testified he was not able to make contact with Robert Martinez. Martinez's photograph was released to the media as a person of interest on February 27, 2015.

According to Detective Carion, the case went cold until the summer of 2017 when Ross Brooks, the boyfriend of Martinez's mother contacted the detective. Detective Carion testified Brooks told detectives Martinez confessed to killing Steven. Thereafter, Detective Carion obtained an arrest warrant for Martinez and arrested Martinez on June 2, 2017. Detective Carion

also obtained a search warrant for the phone records associated with the phone number 210-769-2222.

Special Agent Mark Sedwick with the Federal Bureau of Investigations cellular analysis survey team testified he reviewed the cell phone records for 210-769-2222. Agent Sedwick analyzed the records for calls made from that number between 11:21 p.m. on February 19, 2015 and 8:15 a.m. on February 20, 2015, and plotted where calls were made in relation to two points of interest: the Motel 6 located between Pecos La Trinidad and Frio, and the crime scene. According to Agent Sedwick, the calls made from the phone number indicate the phone was in the area of the Motel 6 between 11:28 p.m. February 19, 2015 and 12:03 a.m. February 20, 2015. At 7:47 a.m., a phone call made from the phone number indicates the phone was near a cellular tower with coverage area including the crime scene. Thereafter, the phone moved away from that coverage area and back into a coverage area including the Motel 6 by 8:15 a.m.

## JURY INSTRUCTION
## REGARDING JAILHOUSE WITNESS

In his sole issue on appeal, Martinez contends the trial court erred by not submitting a jury instruction regarding the testimony of a jailhouse witness as set out in article 38.075 of the Texas Code of Criminal Procedure. Martinez argues that the testimony of his uncle Larry Isaac ("Isaac"), who was incarcerated in the Bexar County Jail at the same time as Martinez, warranted a jailhouse-witness instruction. During his testimony, Isaac read from State's Exhibit Nos. 42, 43, and 44, which are letters Martinez wrote to Isaac while both men were in custody. Isaac testified the letters refer to street gang membership and his impression that Martinez was attempting to coerce Isaac into providing exculpatory evidence on Martinez's behalf. Also during his testimony, Isaac testified Martinez confessed his involvement in the shooting in February 2015 and described to Isaac how the shooting occurred.

The trial court did not include a jailhouse-witness instruction in its jury charge. Martinez did not object to the charge that was submitted to the jury.

**Standard of Review**

We review a claim of jury charge error through a two-step process. *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015). We first determine whether there was error in the charge and, if so, whether that error was harmful. *Id.* Preservation of error becomes important in the second step of our review because whether an alleged jury charge error was preserved determines the degree of harm required for reversal. *Id*. at n.8. If error was preserved, we must reverse if the record shows the defendant suffered "some harm" as a result of that error. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Conversely, we will not reverse for unpreserved error unless the defendant shows that the error was "fundamental" and that he suffered "egregious harm" from it. *Id.* Here, Martinez acknowledges error was not preserved.

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011) (citing *Almanza*, 686 S.W.2d at 172).

**Applicable Law**

Article 38.075 of the Texas Code of Criminal Procedure provides:

A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the

> defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. art. 38.075(a) (West Supp. 2017). A trial court must sua sponte include an article 38.075 jailhouse-witness instruction when applicable to the case. *Phillips*, 463 S.W.3d at 65; *Brooks v. State*, 357 S.W.3d 777, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

An article 38.075 instruction informs the jury it cannot rely on jailhouse-witness testimony unless there is also other independent evidence connecting the defendant to the offense. *Brooks*, 357 S.W.3d at 781. Therefore, when a trial court errs by not giving a jailhouse-witness instruction, we eliminate the jailhouse witness's testimony from consideration and examine the remaining portions of the record to see if there is any evidence tending to connect the defendant with the commission of the crime. *Ruiz v. State*, 358 S.W.3d 676, 681 (Tex. App.—Corpus Christi 2011, no pet.); *Brooks*, 357 S.W.3d at 782. The remaining "evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Ruiz*, 358 S.W.3d at 680 (quoting *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011)). Therefore, "the existence of corroborating evidence 'tending to connect' [Martinez] to the offense [will] 'render harmless' the trial court's failure to submit an article 38.075 instruction by fulfilling the purpose that such an instruction is designed to serve." *Brooks*, 357 at 781-82. "A harmless error analysis for the omission of an article 38.075 witness instruction is flexible and takes into account the existence and strength of such corroborating evidence and the applicable standard of harm." *Id*. at 782.

### Discussion

Assuming, without deciding, that Isaac's testimony warrants an article 38.075 instruction and that the trial court erred by not including a jailhouse-witness instruction in the jury charge, we

examine whether the lack of an article 38.075 instruction resulted in egregious harm. *See Brooks*, 357 S.W.3d at 782. To address this issue, we eliminate Isaac's testimony regarding Martinez's statements and determine whether the remaining inculpatory evidence tends to connect Martinez to the offense. *See id*.

Here, there is ample evidence—apart from Isaac's testimony about the letters Martinez wrote to him while both were in the Bexar County Jail—tending to connect Martinez to Steven's murder. Both Patrick and Patricia testified they saw Steven in a maroon vehicle with a broken windshield in which Martinez was also a passenger. Rodriguez further described a similar vehicle, although burgundy rather than maroon, with a broken windshield parked near the ditch where Steven's body was found. Rodriguez heard gunshots just a few minutes later, which she reported to 9-1-1 and which were ultimately connected to Steven's murder. Additionally, the jury heard testimony regarding the cellular mapping of Martinez's phone. Agent Sedwick testified that the cellular records indicated the phone associated with Martinez's phone number was within range of a cellular tower's coverage area that included the crime scene. Finally, the jury heard testimony from Detective Carion that the boyfriend of Martinez's mother informed detectives that Martinez admitted to shooting Cerna.

Rational jurors could have found that this evidence sufficiently connected Martinez to Steven's murder. *Ruiz*, 358 S.W.3d at 680; *see Smith*, 332 S.W.3d at 443 (reiterating that evidence an accused was near, or at, the scene of the crime at or about the time the crime was committed may tend to connect the accused to the crime, when coupled with other suspicious circumstances). As there is sufficient corroborating evidence tending to connect Martinez to Steven's murder, the trial court's failure to give an article 38.075 jailhouse-witness instruction did not egregiously harm Martinez. *See Brooks*, 357 S.W.3d at 782-84 (holding that the trial court's failure to give a

jailhouse-witness instruction did not egregiously harm the defendant where there was corroborating evidence tending to connect him to the offense).

Accordingly, we overrule Martinez's sole issue on appeal.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

Irene Rios, Justice

DO NOT PUBLISH