

NUMBER 13-10-00644-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ESTEBAN RUIZ,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

On appeal from the 28th District Court
of Nueces County, Texas.

# OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Opinion by Justice Garza

Appellant, Esteban Ruiz, was indicted for murder; the trial court found him guilty

of the lesser-included offense of manslaughter,[1] *see* TEX. PENAL CODE ANN. § 19.04

(West 2003), and assessed punishment at twenty years' imprisonment. *See id.* § 12.33

---

[1] The case was tried before a jury. After the close of the evidence, however, against the advice of his counsel, appellant elected to waive a jury trial and have the trial court decide his guilt or innocence.

(West Supp. 2010).  By a single issue, appellant contends that the evidence is legally insufficient to support his conviction because the testimony of a jailhouse informant was insufficiently corroborated by other evidence tending to connect him to the offense.  We affirm.

## I.  BACKGROUND

### A.  The State's Evidence

#### 1.  Richard South

Richard South testified that about an hour before sunrise on the morning of September 30, 2008, he found a female victim's body, later identified as Kathleen Telge, along the Oso Bay area in Nueces County, Texas.  South called the police; an officer arrived about ten minutes later.

#### 2.  Pete Garza

Officer Pete Garza of the Corpus Christi Police Department testified that he arrived at the scene about 6:49 a.m. and determined that Telge was deceased.  Officer Garza concluded that she had been there for "a number of hours."

#### 3.  Oscar Valadez

Oscar Valadez, an inmate, testified that he had a history of convictions and had a pending forgery charge.  He agreed to testify in exchange for lenient treatment from the prosecutor.  Valadez had been incarcerated with appellant in the county jail.  While incarcerated, appellant told Valadez the following:  (1) appellant had been with "Kat" (Telge) and "Devon" (Herrero) one night and Kat had been smoking crack cocaine; (2) Kat and Devon met an "old man" at a motel, where they stole his money in order to purchase more drugs; (3) after the events at the motel, Kat and Devon were riding in appellant's truck; (4) Devon asked appellant to stop the truck, and when he did, she got

2

out and ran; (5) Kat attempted to get out also, but appellant pulled her back into the truck by her hair, closed the door, and slammed her head against the window repeatedly; (6) appellant also hit her and choked her until she stopped breathing; and (7) after driving around a bit and taking some more drugs, appellant dumped Telge's body.

On cross-examination, Valadez testified that he had met Telge a few times "out in the street." He also testified that Telge had a significant drug habit and engaged in prostitution to support her drug habit.

### 4.  Dr. Ray Fernandez

Ray Fernandez, M.D., medical examiner for Nueces County, performed an examination of Telge's body using a "postmortem sexual assault kit," by which swabs of various areas of the body are taken and submitted for laboratory analysis. Drug testing was conducted on additional samples by a toxicology lab. The toxicology tests showed the presence of cocaine and benzoylecgonine, a breakdown product of cocaine, in Telge's blood. According to Dr. Fernandez, the cause of Telge's death was blunt head trauma with a contributory condition of cocaine intoxication. Telge sustained two or three blows to her head and abrasions on the left side of her neck and jaw. These injuries were consistent with someone grabbing Telge by the neck or throat and slamming her head against the door of a vehicle. Dr. Fernandez conducted his examination of Telge's body after 9:30 a.m. Based on the fact that no decomposition had occurred, Dr. Fernandez believed that Telge's death had occurred "minutes" or "hours" before she was found.

On cross-examination, relevant to the DNA testing discussed below, Dr. Fernandez testified that traces of semen can remain detectable in a person's mouth for

3

up to six hours after ejaculation. On redirect examination, Dr. Fernandez testified that because semen was detectable in Telge's mouth and her body remained at the crime scene for approximately three and a half hours before the medical examination, the time frame for when the semen may have been deposited in her mouth was "possibly" narrowed to approximately two and a half hours before her body was discovered.

### 5.   Lisa Harmon Baylor

Lisa Harmon Baylor, a forensic scientist for the Texas Department of Public Safety Crime Laboratory in Corpus Christi, testified that she attempted or conducted DNA testing on:  (1) three condom wrappers found at the site; (2) samples from the postmortem sexual assault collection kit from Telge's body[2], and (3) buccal swabs obtained from appellant.

Baylor testified that:  (1) no DNA profile was obtained from the condom wrappers; (2) oral swabs from Telge's mouth contained semen, which were consistent with appellant's DNA; and (3) the remaining samples tested contained either only Telge's DNA or a "mixture" of DNA belonging to Telge and another unidentified individual that was not appellant.  Appellant was excluded as a contributor to all the DNA samples except for the oral swabs.

### 6.   Tim Revis

Tim Revis, a detective in the Homicide/Robbery Division of the Corpus Christi Police Department, testified that, based upon his investigation and Telge's cell phone records, the last phone call made from Telge's phone was around 3:25 a.m. the morning she was killed.  Telge talked by phone to an acquaintance, Bridget Emery, at

---

[2] The sexual assault evidence collection kit included:  (1) a known blood sample; (2) vaginal swabs and smears; (3) oral swabs and smears; (4) rectal swabs and smears; (5) left and right neck swabs; (6) left and right breast swabs; (7) pulled head hairs; (8) pubic hair combing; (9) a single hair from right bra cup; (10) fingernail clippings from both hands; and (11) a pair of panties.

4

approximately 3:26 a.m. that morning. The autopsy findings were not made public, except that Telge had suffered blunt force trauma to her head.

On cross-examination, Detective Revis testified that during his investigation, he learned that Telge's live-in boyfriend, Timothy Packert, had been with her until around 2:00 or 3:00 a.m. the morning she died. Two other individuals, Lincoln McAfee and Antonio Alamo, were with Telge and Packert at their apartment until around 2:00, when Telge left the apartment. The investigation revealed that Packert had previously been arrested for assaulting Telge.

On re-direct examination, Detective Revis said that, after obtaining statements from McAfee and Alamo and speaking to Emery, he eliminated Packert as a suspect because Packert had not seen Telge after she left the apartment around 2:00 a.m. He also ruled out McAfee and Alamo as suspects, apparently because their stories were consistent and they did not see Telge after 2:00 a.m.

After the State rested,[3] the trial court allowed the State to reopen for the limited purpose of recalling Detective Revis. Detective Revis testified that in February 2009, approximately six months after Telge's death, he became aware that Devon Herrero was a potential witness. Detective Revis testified that he did not attempt to contact Herrero because she was deceased and that appellant pleaded guilty to her murder. Detective Revis also stated, on cross-examination, that Telge had previously filed a report complaining that Packert had struck her. According to Telge's family, Packert left town after Telge's death.

---

[3] Outside the presence of the jury, the trial court heard arguments from counsel regarding whether the State should be permitted to introduce evidence that appellant had pleaded guilty to murdering Devon Herrero. The State argued that the evidence should be admitted because, among other reasons, it showed appellant's "consciousness of guilt."

5

Appellant presented no witnesses. After appellant elected to have the trial court determine the issue of guilt or innocence, the trial court found appellant guilty of the lesser-included offense of manslaughter and sentenced him to twenty years' imprisonment. This appeal followed.

## II. CORROBORATION OF JAILHOUSE INFORMANT TESTIMONY

### A. Standard of Review and Applicable Law

Article 38.075 of the Texas Code of Criminal Procedure provides:

> (a) A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. In this subsection, "correctional facility" has the meaning assigned by Section 1.07, Penal Code.

> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows that the offense was committed.

TEX. CODE CRIM. PROC. ANN. art. 38.075 (West Supp. 2010). [4]

Thus, Valadez's testimony—concerning what appellant told him regarding his involvement in Telge's death while both were incarcerated—requires corroboration.

The Texas Court of Criminal Appeals has not determined what standard is required for corroboration of jailhouse informant testimony beyond the language of the statute itself. *See id.* However, one of our sister courts has held that the standard required for corroboration of jailhouse informant testimony under article 38.075 is the same as that required for corroboration of accomplice witness testimony under

---

[4] Article 38.075 "applies to any case in which a judgment has not been entered before the effective date [Sept. 1, 2009] of this Act." *See* Act of May 20, 2009, 81st Leg., R.S., ch. 1422 § 2, 2009 Tex. Sess. Law Serv. 4478 (West). The judgment in this case was entered November 4, 2010. Thus, article 38.075 applies in this case.

6

article 38.14 of the Texas Code of Criminal Procedure.[5] *Watkins v. State*, 333 S.W.3d 771, 778 (Tex. App.—Waco 2010, pet. ref'd). The *Watkins* court noted that "[a]rticle 38.075 was enacted in recognition that incarcerated individuals have an incentive to provide information against other incarcerated individuals and that this testimony should be corroborated." *Id.* (citing Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 1681, 81st Leg., R.S. (2009)). We find the reasoning of the Waco Court persuasive and conclude that the standard for corroboration of jailhouse informant testimony under article 38.075 is the same as the standard for corroboration of accomplice-witness testimony under article 38.14.

In *Smith v. State*, the court of criminal appeals recently restated the standard for reviewing the sufficiency of non-accomplice evidence under article 38.14. 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). By substituting "jailhouse informant" for "accomplice," we conclude that the standard for reviewing sufficiency of non-jailhouse informant evidence under article 38.075 is as follows:

> When reviewing the sufficiency of non-[jailhouse informant] evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. The sufficiency of non-[jailhouse informant] evidence is judged according to the particular facts and circumstances of each case. The direct or circumstantial non-[jailhouse informant] evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence. Therefore, it is not appropriate for appellate courts to independently construe the non-[jailhouse informant] evidence. . . . [R]eviewing courts [are required] to consider the combined

---

[5] Article 38.14 provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 38.14 (West 2005).

force of all of the non-[jailhouse informant] evidence that tends to connect the accused to the offense.

*Id.* (footnotes omitted). "'[P]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" *Id.* at 443 (quoting *Richardson v. State*, 879 S.W.2d 874, 880 (Tex. Crim. App. (1993)). Moreover, a defendant's behavior or actions prior to or following an offense may tend to connect the defendant with the commission of the offense. *Id.* at 445. To evaluate the sufficiency of corroboration evidence, we must eliminate all of the accomplice/jailhouse-informant testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (applying article 38.14).

**B. Discussion**

Here, the State relied on the following non-jailhouse informant evidence: (1) the presence of appellant's semen in Telge's mouth, which suggested that appellant was alone with Telge close to the time of her death, *see Smith*, 332 S.W.3d at 443; (2) the details of Telge's injuries—which were not released to the media—were consistent with Valadez's testimony describing how appellant said he killed Telge, *see Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (holding extraneous offense evidence corroborated defendant's confession to jailhouse informant by detailing the manner in which crimes were committed where jailhouse informant could only have obtained information from the defendant); and (3) Revis testified that Herrero was a potential witness and appellant pleaded guilty to murdering Herrero. *See Ransom v. State*, 920

8

S.W.2d 288, 299. (Tex. Crim. App. 1996) (en banc) (op. on reh'g) (holding attempts to tamper with a witness, and any criminal act designed to reduce the likelihood of prosecution, constitutes evidence of "consciousness of guilt" on the part of the defendant). After eliminating Valadez's testimony from our consideration and conducting an examination of all of the non-jailhouse informant evidence that tends to connect appellant to the offense, we conclude that the evidence is sufficient to tend to connect appellant to the offense for which he was convicted. *See Smith*, 332 S.W.3d at 442. Therefore, having concluded that the testimony of Valadez, a jailhouse informant, was sufficiently corroborated by other evidence tending to connect appellant to the offense, we overrule appellant's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA
Justice

Publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
4th day of August, 2011.