# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00863-CR

**Kenneth Hernandez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-09-500100, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant, Kenneth Hernandez, was convicted of murder after a jury trial and sentenced to life imprisonment. *See* Tex. Penal Code § 19.02. In a single point of error, Hernandez contends a jailhouse informant's testimony was not sufficiently corroborated pursuant to article 38.075 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.075. We affirm the trial court's judgment.

## BACKGROUND

On February 24, 2009, Christy Lynne Espinoza was celebrating Mardi Gras on 6th Street in Austin, Texas. Espinoza's boyfriend testified that the last time he saw Espinoza alive she was in the company of Martha Hernandez, appellant's wife.[1] Espinoza's burning body was found

---

[1] Because Martha Hernandez shares the same surname as the appellant, we will refer to her by her first name for clarity.

the following morning on the side of the road. A military identification card belonging to Martha was found adjacent to the body. An autopsy report revealed Espinoza had suffered a non-lethal injury to the back of her neck within hours of death and concluded she likely died from suffocation prior to being set aflame.

*Appellant's Interviews*

On February 25, 2009, the police interviewed appellant who admitted to being on 6th Street the previous night but claimed he spent the rest of the evening at his sister's house. Appellant denied being with Martha on that night, told police he and Martha were in the process of divorcing, and claimed he had not seen Martha for a month. When shown a photograph of Espinoza, appellant denied that he recognized her but noted that she looked a lot like his wife, Martha. At the end of the interview, the police asked Hernandez to inform them if he had any further communication with Martha. Cell phone records revealed that appellant called Martha immediately after the interview. Appellant never reported the conversation to the police.[2]

On March 9, 2009, after Martha was taken into custody, police again interviewed appellant who admitted that he had previously lied to officials about being with Martha on the night Espinoza died. Appellant told police that he and Martha were partying on 6th Street that night when Martha met and invited Espinoza to accompany them to a club where they drank shots and danced. He, Martha, and Espinoza then left 6th Street in appellant's white Honda Civic, and appellant drove

---

[2] On March 6, 2009, appellant contacted police to inform them he had been in contact with Martha and that she was in Mexico. That same day, appellant retrieved Martha from Mexico, and she was taken into custody by U.S. Border Patrol agents.

2

around Austin with Martha in the front passenger seat and Espinoza in the back. At some point, appellant pulled up to a convenience store and purchased bottles of orange juice, which were mixed with alcohol in the car and consumed by the threesome as they continued to drive. Surveillance video from the convenience store confirms that at 1:45 a.m., appellant bought three bottles of orange juice which he handed to a passenger in the front seat. The front seat passenger appears to be communicating with someone in the backseat.

At some point during the drive, Espinoza switched positions in the car with Martha and moved to the front passenger seat. After they had switched positions, appellant told police he looked over to see Martha "trying to hurt" Espinoza. Appellant insisted he told Martha to stop, but she refused because she was jealous of Espinoza for flirting with him. Martha then, according to appellant, placed Espinoza in a headlock, tried to punch her, and wrapped her head in Saran Wrap, suffocating her.[3] During the assault, appellant described Espinoza's condition as impaired from intoxication but still struggling and attempting to defend herself. Appellant told police he repeatedly urged Martha to stop and did not assist her with the murder.

At 3:17 a.m. that morning, surveillance video shows appellant's white Honda Civic driving through a toll booth. The toll booth employee on duty testified that a male was driving the vehicle, that a female was sitting in the front passenger seat and appeared to be passed out, and that another female sat in the back seat staring at the employee. The toll booth employee described

---

[3] Martha had Saran Wrap in the car to care for her recent tattoo. In a third interview after he was taken into custody, appellant claimed that—in addition to using Saran Wrap—Martha wrapped the seatbelt around Espinoza's neck and pulled backward until she eventually stopped moving.

3

appellant as "rushed," noting that he tried to drive through the toll booth before she had a chance to give him his change.

After Espinoza was dead, appellant told police Martha instructed him to drive to a convenience store and purchase gasoline to burn Espinoza's body. At 3:27 a.m., surveillance video from a Speedy Stop convenience store shows appellant entering the store to buy cigarettes and a gasoline can. Moments later, appellant can be seen at the gas pumps, filling the can with gasoline and then smoking a cigarette before heading back to his car. In a later interview, appellant claimed that while he was in the store, he looked at the security cameras and stated several times, "help me." When told that the store surveillance video did not show him appealing to the camera for help, he insisted that he had done so but declined to explain why he did not ask the store clerk for help.

Appellant told police he then drove to the area where Espinoza's body was found. According to appellant, Martha pulled Espinoza from the car, poured gasoline on her, and set her aflame while he waited in the car. When they returned home, appellant claimed that Martha insisted on throwing away their clothes and items from the car as well as having the Honda washed and detailed the day after the murder.

Appellant was arrested for murder on March 10, 2009. During his custodial interrogation, he admitted previously visiting the Travis County Jail in an attempt to see Martha—despite specific instructions from the police not to speak with her. Appellant also told police that Martha was fearful she would be deported for a pending aggravated assault charge and had discussed with him—for months prior to the murder—the idea of killing a woman who resembled her so that Martha could take her identity. According to appellant, Martha burned Espinoza's body

4

and left her identification card near the body to fake her own death and steal Espinoza's identity. Appellant denied that he and Martha expressly discussed killing Espinoza to obtain her identify but stated that, at the time of the offense, it occurred to him that "obviously this is the reason why she is doing this."

*Jailhouse Informant's Testimony*

At trial, Damon Lyons—a jailhouse informant who had shared a jail cell with appellant at the Travis County Jail—testified that appellant told him that he and his wife had murdered a woman to steal her identity. Appellant reportedly provided details about the murder to Lyons, stating that they had met their victim on 6th Street, left to drive around and drink, that Martha wanted to murder Espinoza to steal her identity, that there was Saran Wrap in the car because of Martha's recent tattoo, and that his wife had left her identification at the crime scene. With regard to the commission of the murder, Lyons testified that appellant told him Martha began the attack by attempting to choke the victim who fought back and struggled against her attacker. Appellant then attempted to hold Espinoza down while Martha choked her. But because he was driving, appellant could not restrain the victim and eventually ordered Martha to get the Saran Wrap and smother Espinoza.

After the murder, appellant drove to a convenience store to purchase gas. According to Lyons, appellant told him that he pulled his vehicle to the side of the convenience store—instead of pulling up to the gas pumps—in an effort to avoid store surveillance cameras. With regard to the burning of the body, Lyons testified that appellant said that he was the one who actually poured gasoline on Espinoza's body and instructed Martha to "light her up." According to Lyons, appellant then instructed Martha to give him her clothes and that he would take care of cleaning everything.

5

Lyons testified that, during their conversations, appellant repeatedly referred to Martha using profanity, blamed her for getting caught, and wanted her to take the blame for the murder.

After Lyons testified, an investigator for the State confirmed that Lyons had shared a jail cell with appellant. The investigator further confirmed that when appellant drove to the Speedy Stop convenience store to purchase gas, he pulled up to the side of the convenience store rather than the pumps. According to the investigator, this information was never publicly disseminated.

Appellant was charged with the murder of Espinoza. *See id.* § 19.02. The State's theory at trial was that appellant, while not actually committing the murder, was present during the murder and promoted or assisted Martha in the commission of the offense. *See* Tex. Penal Code § 7.02(a)(2). The trial court instructed the jury, pursuant to article 38.075 of the Texas Code of Criminal Procedure, that it could not convict appellant based on Lyons's testimony unless it found the testimony was corroborated by other evidence tending to connect appellant with the murder of Espinoza. *See* Tex. Code Crim. Proc. art. 38.075. The jury convicted appellant of murder and assessed punishment at life imprisonment.

**STANDARD OF REVIEW**

Pursuant to article 38.075 of the Texas Code of Criminal Procedure, a defendant may not be convicted of an offense on the testimony of a witness to whom the defendant made a statement against interest while the witness was confined in the same correctional facility as the defendant "unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed." *See id.* The corroboration is not sufficient if it "only shows that the offense was committed." *Id.* The Texas Court of Criminal Appeals has not yet addressed the standard

6

of review for article 38.075. Our sister courts have concluded—and we agree—that the standard required for corroboration of jailhouse-informant testimony under article 38.075 is the same as that required for corroboration of accomplice-witness testimony under article 38.14.[4] *See Schnidt v. State*, 357 S.W.3d 845, 851 (Tex. App.—Eastland 2012, pet. ref'd); *Ruiz v. State*, 358 S.W.3d 676, 680 (Tex. App.—Corpus Christi 2011, no pet.); *Brooks v. State*, 357 S.W.3d 777, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Watkins v. State*, 333 S.W.3d 771, 778 (Tex. App.—Waco 2010, pet. ref'd).

Applying this standard, a reviewing court must eliminate the jailhouse informant's testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *See Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2001) (corroboration of accomplice-witness testimony); *Ruiz*, 358 S.W.3d at 681 (corroboration of jailhouse-informant testimony). The remaining evidence is "sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Smith*, 332 S.W.3d at 442. Reviewing the corroborating evidence for its tendency to connect the defendant to the commission of the crime differs from review of the evidence for legal and factual sufficiency. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). Under this rule, it is not necessary that there be corroborating evidence on all elements of the offense or that the corroborating evidence be sufficient by itself to establish the accused's guilt beyond a reasonable doubt. *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App.

---

[4] Article 38.14 of the Texas Code of Criminal Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. art. 38.14.

7

2007); *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). Further, the defendant's "liability as a principal or under a parties theory is of no relevance," and the corroborating evidence tending to connect the defendant to the crime "need not establish the exact nature of his involvement." *Joubert*, 235 S.W.3d at 731.

Rather, all that is required is that there be some evidence—other than the jailhouse informant's testimony—which tends to connect the accused to the commission of the offense. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Both direct and circumstantial evidence may furnish the necessary corroboration. *Reed*, 744 S.W.2d at 126. "Insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration." *Id.* at 126. As a reviewing court, we are not to independently construe the corroborating evidence but are to consider the combined force of all the corroborating evidence that tends to connect the accused with the offense. *Cox v. State*, 830 S.W.2d 609, 611–12 (Tex. Crim. App. 1992); *Reed*, 744 S.W.2d at 126. When there are conflicting views of the evidence, we are to defer to the fact-finder's resolution of the evidence. *Smith*, 332 S.W.3d at 442.

## DISCUSSION

In his sole point of error, appellant argues that the evidence corroborating the testimony of Damon Lyons, a jailhouse informant, is insufficient to connect appellant to the murder of Espinoza under article 38.075. After eliminating from consideration the testimony of Lyons, we conclude there is sufficient evidence in the record tending to link appellant with the commission of the murder. First, by his own statements to the police, appellant acknowledged that he was in the car at the time Espinoza was murdered. Appellant admits the evidence establishes he was present

8

during the murder but argues that his mere presence alone is not sufficient corroborating evidence. *See Etheredge v. State*, 542 S.W.2d 148, 150 (Tex. Crim. App. 1976); *Navejar v. State*, 760 S.W.2d 786, 788 (Tex. App.—Corpus Christi 1988, pet. ref'd). While appellant is correct that his mere presence at the scene of the crime is insufficient—by itself—to corroborate Lyons's testimony, evidence of such presence coupled with other suspicious circumstances may tend to connect the accused with the offense. *Smith*, 332 S.W.3d at 443; *Dowthitt v. State*, 931 S.W.2d 244, 250 (Tex. Crim. App. 1996). Similarly, while motive and opportunity evidence is insufficient on its own to corroborate jailhouse-informant testimony, both may be considered in connection with other evidence that tends to connect the accused to the crime. *Smith*, 332 S.W.3d at 442; *Reed*, 744 S.W.2d at 127. Moreover, a defendant's suspicious behavior or actions prior to or following an offense may tend to connect the defendant with the commission of the offense. *Smith*, 332 S.W.3d at 445; *see also Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009).

Viewed in the light most favorable to the jury's verdict, the corroborating evidence established the following: (1) appellant and Martha were the only people in the car with Espinoza at the time she was murdered, *see Cox*, 830 S.W.2d at 611 (accused's presence at scene of crime when coupled with other suspicious circumstances can be sufficient corroboration to support conviction); (2) the victim likely died from suffocation, *see Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983) (evidence merely showing commission of offense is not alone sufficient corroboration but is factor to be considered along with other evidence); (3) appellant had the opportunity to assist Martha with the murder as he was sitting next to Espinoza during what he admitted was a prolonged struggle, *see Cox*, 830 S.W.2d at 612 ("There is evidence that appellant

9

was present when the offense occurred indicating that he had opportunity."); (4) appellant purchased gas from a convenience store which was used to set the victim's body aflame and made no attempt at the store to seek help, *see id.* at 612 ("evidence of appellant's utter disregard for the victim, her rights and her life" used as corroborating evidence); (5) appellant did not report the incident to authorities until he was questioned by police, *see id.* (defendant's failure to report crime until questioned by police "suspicious circumstance" used as corroborating evidence); (6) after the murder, appellant initially denied to the police that he was with Martha on the night of the murder, s*ee Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) (defendant's initial denial of his presence at crime scene was "suspicious circumstance" used as corroborating evidence); (7) after his initial interview with police, appellant immediately contacted Martha but failed to report the conversation to police as instructed, *see Gill*, 873 S.W.2d at 48 (defendant's secretive actions after offense used as corroborating evidence); (8) after Martha was arrested, appellant attempted to visit her at jail—again contrary to police instructions, *see Simmons*, 282 S.W.3d at 510 ("the unusual activity on the part of defendant in undertaking to reach [an accomplice] in jail . . . was of itself some evidence tending to prove a consciousness of guilt, and tended to connect defendant with the commission of the crime"); (9) appellant acknowledged that the victim resembled Martha and admitted that he and Martha had been discussing for months a plan to kill a woman who resembled Martha to steal her identify, *see Reed*, 744 S.W.2d at 127 (evidence of motive alone is insufficient corroboration but may be considered in connection with other evidence tending to connect accused with the crime); and (10) the details of how appellant purchased gas at the Speedy Stop—which were not released to the media—were consistent with Lyons's testimony, s*ee Prible v. State*, 175 S.W.3d

724, 731 (Tex. Crim. App. 2005) (holding extraneous offense evidence corroborated defendant's confession to jailhouse informant by detailing manner in which crimes were committed where jailhouse informant could only have obtained information from defendant).

While the foregoing circumstances individually may not each be sufficient to corroborate Lyons's testimony in this case, we conclude that rational jurors could have concluded that the above evidence, taken together, sufficiently tended to connect appellant to Espinoza's murder. *See Cox*, 830 S.W.2d at 612 ("We believe that, in this case, the evidence of other suspicious circumstances filled the sufficiency gap left by evidence of appellant's mere presence."); *Simmons*, 282 S.W.3d at 511 ("[W]hen all of the non-accomplice testimony is viewed together, rather than as isolated, unrelated incidents, a rational juror could find that this evidence tends to connect appellant to the offense."). Accordingly, we overrule appellant's sole issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Field

Affirmed

Filed: July 11, 2013

Do Not Publish

11