

# NUMBER 13-24-00156-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE ANGEL BECERRA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## ON APPEAL FROM THE 430TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Chief Justice Tijerina**

A jury convicted appellant Jose Angel Becerra of capital murder and attempted capital murder, and the trial court assessed punishment at life and fifty years' imprisonment, respectively. *See* TEX. PENAL CODE ANN. § 19.03(a)(2); 15.01(a). By ten issues, which we have reorganized and renumbered, appellant argues: (1–2) the evidence was legally insufficient to support his convictions; (3) the corroboration evidence

was legally insufficient under Article 38.075 of the Texas Code of Criminal Procedure; (4–5) his trial counsel was ineffective for failing to object to testimony and failing to request a jury instruction under Article 38.075; (6) the trial court committed egregious error when it failed to correct the jury charge; (7–8) the State committed prosecutorial misconduct resulting in fundamental error in violation of United States and Texas Constitutions; and (9–10) his trial counsel was ineffective under the United States and Texas Constitutions when he failed to object to testimony and evidence. We affirm.

## I.   LEGAL SUFFICIENCY

By his first two issues, appellant contends that the evidence is legally insufficient to support his convictions. Specifically, appellant argues that the evidence "does not establish [his] involvement in the case" and is "so unreliable and weak" that "it cannot serve as a legal basis for the convictions in this case." Appellant criticizes the testimony of the "surviving alleged victim Alejandro Mendoza," testimony regarding his fingerprint on the weapon's magazine, and the testimony of the "jail house snitch Kenneth Jones."

## A.   Pertinent Facts

At trial, Mendoza[1] testified that he was friends with the deceased Jesus Hinojosa who was nicknamed Zeus. On November 11, 2018, Zeus visited Mendoza's house to smoke synthetic marijuana, but the two left later to buy cigarettes. Mendoza entered a convenience store, and when he returned to Zeus's car, he noticed a blue Ford Expedition parked next to it. Mendoza entered Zeus's vehicle and noticed appellant sitting behind Zeus transacting a drug and gun deal.[2] According to Mendoza, appellant stepped out of

---

[1] Alejandro Mendoza is the named victim in the attempted capital murder charge.

[2] Mendoza clarified that he was unaware appellant was planning to deal drugs.

2

the vehicle to call his brother, Isaac. Once Isaac arrived, appellant and Isaac "hopped" into the vehicle, "loaded" their guns, and "cocked it [at their] heads" "demanding everything that [they] had." Mendoza remembered appellant saying he did not care if he went to jail; appellant just wanted their phones, their stuff, and the drugs. Mendoza stated that Zeus kept asking appellant, "Why are you doing this to me?" while appellant held the gun to his cheekbone. Suddenly, appellant shot Zeus under his cheekbone, causing his eye to pop out. "Zeus somehow managed to get out of the car and start[ed] running," said Mendoza.

Mendoza claimed he began "screaming out of [his] own mind, please don't shoot me" while appellant and Isaac got out of the car and continued shooting Zeus as he ran away. Mendoza heard more than five gunshots and witnessed Zeus fall to the ground. Isaac then shot Zeus again while he was on the ground.[3] Mendoza stated this whole time he was "praying to God for [his] life." As appellant and Isaac were about to leave, they looked at Mendoza, pointed the gun at him, and shot him. Mendoza stated that he was losing air and suffocating on his own blood while Isaac and appellant fled the scene in their blue Ford Expedition.

At the hospital, Mendoza identified appellant and Isaac from a photo lineup and informed investigators that he was "2,000% sure" they were the perpetrators of the shooting. Mendoza further explained he was familiar with Isaac and appellant because he went to school with their siblings, and they lived across the street from him.

Hidalgo County Sheriff's Office (HCSO) Deputy Esequiel Reyes Jr. testified that on November 11, 2018, he responded to a "man-down" "shots fired" call. When he arrived

---

[3] Forensic pathologist Norma Jean Farley testified that Zeus's cause of death was a "perforating gunshot wound at the back."

at the scene, he observed Zeus lying unresponsive on the floor. Blood was oozing from his head and abdominal area. Reyes testified that Mendoza was frantically screaming that he had been shot. Reyes recovered a cell phone from Zeus's right hand, several spent casings scattered throughout the parking lot, and small baggies of synthetic marijuana in the door panels of the vehicle.

HCSO Sergeant Hermelinda Chavez testified that she obtained surveillance video from a nearby church. In the video, she was able to see the Ford SUV, which was "dark colored, with [a] rear broken window." The occupants of that vehicle were appellant and Isaac. Chavez testified that she later located the Ford SUV at Isaac's girlfriend's apartment.

Sergeant Lucio Torres with the HCSO assisted in Isaac's arrest. According to Torres, Texas Department of Public Safety (DPS) officers performed a traffic stop on Isaac's girlfriend's vehicle. Isaac was a passenger inside the vehicle but "bailed out." Torres assisted in searching for Isaac in the area, and he recovered a Smith & Wesson firearm, a Sturm Ruger firearm, and a magazine with some ammunition. Torres stated that as part of his investigation, he reviewed video surveillance of Isaac purchasing duct tape at Dollar General on the day of the murder.

United States Marshal Miguel Ruiz testified that he assisted in apprehending appellant at a hotel in Harlingen. When the marshals confronted appellant, he fled the scene, running toward the back of the hotel across a Burger King parking lot. Appellant then jumped over a couple of fences into the parking lot of an abandoned hotel. Finally, appellant was located hiding inside a trash can and was ultimately arrested.

4

DPS forensic scientist Vanessa Robles testified that she performed a fingerprint examination on a silver magazine that was recovered from where Isaac was arrested. Robles explained to the jury the methods she used to perform this examination and make her assessment. According to her analysis, a "suitable latent print developed and preserved was identified to the left thumb on the exemplars from DPS files . . . . bearing [appellant's] name." Her report was admitted into evidence. Similarly, forensic scientist Norma Luna testified that she conducted firearms and fired ammunition examinations. Based on her analysis, spent shell casings that were recovered from the scene were fired from the Smith & Wesson and Ruger pistols, which were recovered when Isaac was arrested.

HCSO Sergeant Investigator Javier Vargas testified that he recovered Zeus's and Mendoza's cell phones. Upon his review, he noticed there were Facebook messages and calls coming from Issac between 6:21 p.m. to 6:43 p.m., right before the homicide, which occurred at 6:49 p.m. According to Vargas, there was no more communication between Isaac and the victims after 6:49 p.m. The messages were admitted into evidence. Immediately preceding the murder, appellant asked Zeus "Where you at?" and told him "yo, coming bro." Vargas subsequently obtained Isaac's cell phone records, which revealed that Issac's cell phone was near the murder scene and also left the area southbound after the murder.

Kenneth Jones testified that he is currently serving a sentence of 210 months in federal prison for bank robbery. During his time in custody in Hidalgo County, he was held with appellant in an "eight-man [holding] tank." Jones testified that he became good friends with appellant; they would eat together and work out together. Jones stated that

appellant shared details of the murder with him because Jones "beat a lot of cases," and the two were "planning and strategizing how [appellant] could beat the case."

According to Jones, appellant reported that he and Isaac planned to rob Zeus, and the two "agreed that if the victim didn't give it up, that they were going to kill him and take [the drugs]." Appellant told Jones that appellant and Isaac were messaging Zeus through Facebook and calling him from a burner phone because they did not want their personal numbers to "show up on [Zeus's] phone." Jones continued: "And he told me how he did a countdown. He counted down from 10, 9, 8, 7, 6, and then he said he counted all the way down and he refused to give it up, so he blasted him."

Jones testified that appellant "was worried about his cell phone pinging off the tower at the time, placing him at the crime scene . . . . because they recovered his cell phone." According to Jones, if appellant bonded out of jail, "he was going to kill [Mendoza], or if he couldn't kill [Mendoza], he was going to flee to Mexico." Appellant asked Jones to tell appellant's brother "that he was going to trial," and he "wanted to kill" Mendoza, the surviving victim, "as soon as possible because he wanted to go to trial . . . and [Mendoza] was the only one who could identify [appellant] at the crime scene at the time the murder took place." Appellant wanted his brother to kill Mendoza in an inconspicuous way, such as "catch[ing] him coming drunk from a club or something like that."

## B.    Standard of Review & Applicable Law

To determine if the evidence is legally sufficient, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018); *Nisbett v. State*, 552

S.W.3d 244, 262 (Tex. Crim. App. 2018) ("Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged."); *Brooks v. State*, 323 S.W.3d 893, 905 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The factfinder is entitled to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Reviewing courts "determine whether the necessary inferences are reasonable based upon on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). Appellate courts must avoid "divide and conquer" strategies in reviewing the sufficiency of the evidence; instead, appellate courts must consider the evidence cumulatively. *See Nisbett*, 552 S.W.3d at 262.

We give great deference to the trier of fact and assume the factfinder resolved all conflicts in the evidence in favor of the verdict. *See Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence. A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett*, 552 S.W.3d at 262. We will uphold the verdict unless the factfinder "must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 518.

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Nisbett*, 552 S.W.3d at 262. Legal

7

sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would instruct the jury that a person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1). A person commits capital murder if the person intentionally commits murder in the course of committing or attempting to commit, among other things, robbery. *See id.* § 19.03(a). A person commits an "attempted" offense if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

## C. Discussion

Here, Mendoza testified that appellant threatened him and Zeus during a failed drug transaction, and small baggies of illegal narcotics were recovered from the door panel of Zeus's vehicle. *See id.* § 19.03(a)(2). When Zeus refused to give the drugs up, Mendoza witnessed appellant shoot Zeus in the face, causing his eye to "literally pop out." This testimony, alone, is sufficient to support the convictions. *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (en banc) ("It is well established that a conviction may be based on the testimony of a single eyewitness."). Once Zeus was able to run away, appellant fired another shot at Zeus, causing Zeus to collapse. Appellant returned to Mendoza, who was pleading for his life and shot Mendoza in the abdomen. There was evidence that appellant exchanged messages and calls with Zeus immediately preceding the shooting. Cell phone data revealed appellant was at the crime scene at the time of the murder before he fled the scene. *See Devoe v. State*, 354 S.W.3d 457, 470 (Tex. Crim. App. 2011) ("[F]light is admissible as a circumstance from

8

which an inference of guilt may be drawn.") (quoting *Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995)); *see also Spruiell v. State*, No. 14-23-00465-CR, 2024 WL 4676382, at *8 (Tex. App.—Houston [14th Dist.] Nov. 5, 2024, pet. ref'd) (mem. op., not designated for publication) (holding cell phone tower records placing appellant at the scene of the crime was cumulative legally sufficient evidence to support a murder conviction); *In re A.G.*, No. 01-18-01092-CV, 2020 WL 4006449, at *6 (Tex. App.—Houston [1st Dist.] July 16, 2020, pet. denied) (mem. op.) (finding cumulatively sufficient evidence to support a conviction for capital murder where appellant's phone had contact with the victim's phone on the date of the murder and appellant's phone was near the crime scene around the time of the murder). Ruiz testified that appellant fled the scene and absconded from law enforcement before he was ultimately found hiding in a trash can. *See Devoe*, 354 S.W.3d at 470.

Expert testimony established that spent shell casings recovered from the scene were fired from the two handguns found in Isaac's possession, and appellant's fingerprints were found on the magazine of one of the handguns. Furthermore, there was evidence that appellant fled the scene in a blue Ford SUV, which was recovered from his girlfriend's house, and contained broken rear windows that were taped with black duct tape. There was also testimony that appellant was seen on video purchasing duct tape on the day of the murder. Jones testified that appellant confided in him and revealed particular details about appellant's plan to rob Zeus as well as his plan to kill him if the robbery did not go as planned. And finally, there was testimony that appellant had wanted Mendoza killed before the trial because he was the only witness that could put appellant at the scene. Based on all the evidence presented, we conclude that a rational trier of fact

9

could have found the essential elements of capital murder beyond a reasonable doubt. See *Ingerson*, 559 S.W.3d at 509; *see also Alejandro v. State*, No. 13-19-00183-CR, 2020 WL 6789042, at *5 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2020, no pet.) (mem. op., not designated for publication). Regarding attempted capital murder, we conclude the same evidence was legally sufficient for the jury to find that appellant shot Mendoza in the abdomen with specific intent to cause his death during the commission of a robbery. See TEX. PENAL CODE ANN. § 15.01(a); *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) ("[T]he specific intent to kill may be inferred from the use of a deadly weapon."). We overrule appellant's first and second issues.

## II. CORROBORATION OF JAILHOUSE-WITNESS TESTIMONY

By his third issue, appellant argues the evidence was legally insufficient to connect him to the crime under Article 38.075. According to appellant, if all of Jones's testimony is eliminated, "the remaining evidence that allegedly implicates [appellant] does not sufficiently tend to connect [him] to the offense." By his fourth and fifth issues, appellant argues his trial counsel was ineffective for failing to object to Jones's testimony and failing to request an Article 38.075 jury instruction. By his sixth issue, appellant argues the trial court erred by failing to issue such an instruction sua sponte. Because these issues are all related, we address them together.

### A. Applicable Law

> A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. art. 38.075(a); *see Phillips v. State*, 463 S.W.3d 59, 61 (Tex.

10

Crim. App. 2015). "Jailhouse-witness testimony is inherently unreliable due to the inmate's incentive to better his circumstances." *Phillips*, 463 S.W.3d at 66. Thus, Jones's testimony about what appellant told him regarding his involvement in Zeus's death while both were incarcerated requires corroboration. *See Ruiz v. State*, 358 S.W.3d 676, 680 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.).

Furthermore, "[a] trial court must sua sponte include an article 38.075 jailhouse-witness instruction when applicable to the case." *Martinez v. State*, 662 S.W.3d 496, 500 (Tex. App.—San Antonio 2018, pet. ref'd). "An article 38.075 instruction informs the jury it cannot rely on jailhouse-witness testimony unless there is also other independent evidence connecting the defendant to the offense." *Id.* "[W]hen a trial court errs by not giving a jailhouse-witness instruction sua sponte, we will reverse only if the record shows appellant suffered 'egregious harm' from the omission." *Id.* To make this determination, we eliminate the jailhouse witness's testimony from consideration and examine the remaining portions of the record to see if there is any evidence tending to connect the defendant with the commission of the crime." *Id.*; *Ruiz*, 358 S.W.3d at 680.

The existence of corroborating evidence "tending to connect" appellant to the offense will "render harmless" the trial court's failure to submit an article 38.075 instruction. *Martinez*, 662 S.W.3d at 500. Assuming that Jones's testimony warranted an article 38.075 instruction and that the trial court erred by not including such an instruction in the jury charge, we examine whether the lack of the instruction resulted in egregious harm. *Id.*

## B. Discussion

Notwithstanding Jones's testimony, there is ample evidence to connect appellant

to the crime. Mendoza testified that appellant, while inside Zeus's car, held them both at gunpoint, demanding that he and Zeus give appellant their phones, their stuff, and the drugs. When Zeus refused, appellant shot Zeus in the face then shot him again while he attempted to run away. *See Cavazos*, 382 S.W.3d at 384. The medical examiner testified that appellant died from a gunshot wound to the back. Mendoza further testified that while he was pleading for his life, appellant shot Mendoza in the abdomen and left him to die. *See id.*

Immediately preceding the murder, appellant was sending Facebook messages asking, "Where you at?" and "yo, coming bro." This communication stopped immediately after the murder. This evidence corroborates Jones's testimony that appellant was communicating with Zeus through Facebook messenger on the day of the murder. *See Brooks*, 357 S.W.3d at 782; *see also Keys v. State*, No. 05-22-00669-CR, 2023 WL 3493317, at *3 (Tex. App.—Dallas May 17, 2023, no pet.) (mem. op., not designated for publication). Law enforcement testified that appellant's cell phone records indicated appellant's phone number was within the area of the crime scene at the time of the murder. "'[P]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" *Ruiz*, 358 S.W.3d at 680–81 (quoting Smith, 332 S.W.3d at 443). There was also evidence that appellant's thumbprint matched a thumbprint recovered from the magazine of a pistol that was found in Isaac's possession during his apprehension. *See Cockrum v. State*, 758 S.W.2d 577, 582 (Tex. Crim. App. 1988) (proof that connects an accused to weapon used in offense is proper corroborating evidence). And expert

testimony linked the pistols recovered from Isaac to the shell casings which were recovered from the crime scene. *See id.* There was evidence that appellant absconded from law enforcement and led them on a chase before he was finally located hiding in a trash can.

Based on the foregoing, we find the evidence aside from Jones's testimony sufficiently connected appellant to Zeus's murder. Therefore, we overrule appellant's third issue. *See Washington v. State*, 449 S.W.3d 555, 572 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that once it is determined that independent evidence tending to connect the defendant to the offense exists, the purpose of the jailhouse-witness instruction is fulfilled, and the instruction plays no further role in the factfinders' decision-making process). For the same reason, even assuming that counsel was deficient in failing to request a jury instruction under article 38.075, we conclude there was no prejudicial effect. *See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986); *see also Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that, to obtain reversal on the basis of ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Therefore, we overrule appellant's fourth and fifth issues. Lastly, even assuming the trial court erred in failing omit the jailhouse-witness instruction, we conclude it did not egregiously harm appellant. *See Brooks*, 357 S.W.3d at 782–84 (holding that the trial court's failure to give a jailhouse-witness instruction did not egregiously harm the defendant where there was corroborating evidence tending to connect him to the offense). Accordingly, we overrule appellant's sixth issue.

13

### III. PROSECUTORIAL MISCONDUCT

By his seventh and eighth issues, appellant argues that the State committed misconduct when it elicited testimony and evidence pertaining to his post-arrest silence thereby violating his rights under Article 1 § 10 of the Texas Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. The State asserts appellant failed to preserve error.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1)(A). A defendant's rights under the Fifth Amendment and Texas Constitution article I, § 10 may be forfeited by failing to properly preserve error. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. 2004) (en banc) (determining that appellant's objections referring to the "Fifth Amendment" were insufficient to preserve error under the Texas Constitution); *see Salazar v. State*, 131 S.W.3d 210, 214 (Tex. App.—Fort Worth 2004, pet. ref'd) (finding appellant's failure to object to the State's post-arrest silence questions precluded his raising the issue on appeal); *see also Larios v. State*, No. 13-15-00022-CR, 2015 WL 9487107, at *4 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2015, no pet.) (mem. op., not designated for publication) (concluding that appellant failed to preserve error regarding the State's comments on his post-arrest silence because he did not object at trial); *Lamas v. State*, No. 13-10-00443-CR, 2011 WL 3366399, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2011, no pet.) (mem. op., not designated for publication) (finding the issue was not preserved for our review when appellant failed to object at trial regarding his pre-arrest silence).

14

Appellant concedes that he failed to object but asserts that the conduct here "constitute[d] fundamental error affecting his substantial rights." However, "even constitutional errors . . . may be forfeited on appeal if an appellant failed to object at trial." *Garza v. State*, 435 S.W.3d 258, 261 (Tex. Crim. App. 2014); *Curiel v. State*, 243 S.W.3d 10, 19 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (finding that appellant's objection at trial did not comport with his complaint on appeal concerning appellant's post-arrest silence and therefore waived his complaint); *see also Lairos*, 2015 WL9487107, at *4 (stating that "the right against self-incrimination is forfeitable and not waivable or absolute"). Therefore, appellant's "failure to object extinguishes this right and any corresponding error for the purposes of this appeal." *See Garza*, 435 S.W.3d at 261; *see also Lairos*, 2015, WL 9487107, at *4. Accordingly, we overrule appellant's seventh and eighth issues.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his ninth and tenth issues, appellant argues that his trial counsel was ineffective when he failed to object to evidence regarding his invocation of *Miranda* rights under the Texas and United States Constitutions.

### A. Standard of Review & Applicable Law

To prevail on his ineffective-assistance-of-counsel claims, appellant must prove (1) counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability that but for counsel's alleged deficiency the result of the proceeding would have been different. *See Hernandez*, 726 S.W.2d at 55. We indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Thompson v. State*, 9

15

S.W.3d 808, 813 (Tex. Crim. App. 1999). To defeat this presumption, any allegation of ineffectiveness must be firmly grounded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

Trial counsel generally should be given an opportunity to explain their actions before the court finds counsel ineffective. *Id.* In most cases, a direct appeal proves an inadequate vehicle for raising an ineffective assistance claim because the record generally stands undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see Hart v. State*, 667 S.W.3d 774, 783 (Tex. Crim. App. 2023).

The right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

**B.     Pertinent Facts**

During trial, the State questioned HCSO Sergeant Miguel Lopez whether he advised appellant of his *Miranda* rights and whether appellant understood them. Lopez responded, "Yes, he did. And he chose not to waive those rights, so the interview was

16

terminated." The form indicating that appellant chose to invoke his *Miranda* rights was admitted into evidence as State's Exhibit 274, and the interrogation video demonstrating the same was offered as State's Exhibit 275. The trial court then instructed the jury:

> Okay. Ladies and gentlemen of the jury . . . you've seen and heard something here on the State's Exhibit 275. I'm going to give you an instruction. You should totally disregard anything that you saw in this video, anything that was said, anything that you saw. I'm going to disallow 275 as an exhibit, so do not consider it for any purpose. If you wrote down notes on what he said, you should scratch out those notes at this time[,] so the Court is disallowing the video and also any comments that were made or anything that was shown, so do not consider it for any purpose against the defendant.

On cross-examination, Lopez confirmed that appellant did not "waive his right [against] self-incrimination." The trial court did not admit the video interrogation evidence but did admit State's Exhibit 274. Defense counsel did not object to either exhibit.

## C.  Discussion

Appellant argues that trial counsel's performance "fell outside the range of professional competent assistance, and given the scant evidence in this case, but for counsel's failure to object, a different outcome to the proceeding would have occurred." However, we need not address the deficient-performance prong of the *Strickland* analysis because appellant cannot show a reasonable probability that but for trial counsel's alleged errors, a different outcome would have resulted. *See Hernandez*, 726 S.W.2d at 55; *see Strickland*, 466 U.S. at 670 ("A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."); *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012) (concluding that a reviewing court need not

consider both prongs of the *Strickland* test and can dispose of an ineffectiveness claim if the defendant fails to demonstrate sufficient prejudice).

First, appellant has failed to demonstrate a reasonable probability that the admission of Exhibit 274 prejudiced him. Appellant fails to consider all the other evidence that was presented that supported his conviction and does not explain how the outcome of the proceedings would have been different other than a general statement that it would have led the jury to infer his silence equated to guilt. We disagree with appellant that the evidence in this case amounts to "scant" evidence, such that any question "about his post-arrest silence was tantamount to offering [him] up for conviction." Second, the trial court sua sponte instructed the jury to not consider Exhibit 275 for any purpose; therefore, it would not have made any difference to the proceedings had defense counsel lodged an objection to it. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("[W]e generally presume the jury follows the trial court's instructions in the manner presented."). We overrule his first last two issues.

## V. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
16th day of October, 2025.